PHYLLIS DI MODICA, Plaintiff-Appellee, v. THE DEPARTMENT OF EM-
PLOYMENT SECURITY *et al.*, Defendants-Appellants.
Second District   No. 2—87—0173

Opinion filed December 31, 1987.—Rehearing denied February 2, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart
and Shawn W. Denney, Solicitors General, and Eddie Santiago, Assistant
Attorney General, of Chicago, of counsel), for appellants.

Mary E. Krick, of Prairie State Legal Services, Inc., of Rockford, for
appellee.

JUSTICE INGLIS delivered the opinion of the court:
Plaintiff, Phyllis DiModica, filed a complaint with the circuit court
of Stephenson County for review of an administrative decision of
defendant, Board of Review of the Illinois Department of Employ-
ment Security (Board), declaring her ineligible for extended unemploy-
ment benefits for the period between April 25, 1982, and April 16,
1983. The circuit court reversed the Board's decision, and defendants
appeal. On appeal, defendants contend that the circuit court erred in
reversing the Board's decision because the evidence supported the
Board's conclusion that plaintiff failed to engage in a systematic and
sustained effort to find work. We affirm the decision of the circuit
court.
Plaintiff was employed by Micro Switch, Inc., of Freeport, Illinois,
for over 11 years before she was laid off in July 1981. She worked as
a silk-screener during her last seven years with the company, and her
final rate of pay was $6.51 per hour. Plaintiff applied for extended un-
employment benefits pursuant to section 409 of "An Act in relation to

a system of unemployment insurance" (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 409) after her regular benefits expired in April 1982. Her request was originally denied for reasons unrelated to the instant case, but she continued to fill out claim forms and appealed the original ruling. In July 1982, plaintiff procured employment as a waitress. She held this job until October 29, 1982, and then worked as a waitress at a different location from November 4 until December 13, 1982. These waitress positions paid $2.01 and $2.25 per hour, respectively.

In January 1983, plaintiff once again started claiming extended benefits. She filed claims for each week from December 27, 1982, through April 16, 1983. During the two relevant periods for which plaintiff sought extended benefits, a total of 24 weeks, she contacted at least 84 prospective employers, according to her claim forms. Most of the 84 contacts plaintiff specifically mentioned on the claim forms were in-person contacts. On a number of the forms, plaintiff also mentioned that she had contacted or recontacted other employers by phone, but did not specifically list those employers.

On the claim forms filed between April and June 1982, plaintiff listed her minimum acceptable wage as $5.80 per hour. She reduced this figure to $4 per hour for the forms filed in 1983 and even listed a wage of $2.25 per hour on some of the forms. On February 22, 1985, a claims adjudicator ruled that plaintiff was not eligible for extended benefits for the period between April 25, 1982, and April 16, 1983, because of her undue wage restriction and her failure to conduct a systematic and sustained work search. In his findings, the claims adjudicator concluded that plaintiff engaged in a work search that was not calculated to return her to the work force because the minimum wage she was willing to accept was $5.80 per hour, but she sought work at places where she could not possibly receive this rate of pay.

Plaintiff's appeal from the ruling of the claims adjudicator was heard by a hearing referee on April 25, 1985. Plaintiff testified that she had been advised by a State job service representative that $5.80 per hour was the minimum amount she would need in order to meet expenses and that is the reason she originally used this figure on the claim form. Plaintiff stated that she was willing to accept a job at a lower figure. Plaintiff also testified that she did not list every single contact with potential employers and was afraid she would be questioned by the State if she listed the same contacts over and over. On May 20, 1985, the referee affirmed the decision of the claims adjudicator. Plaintiff appealed further to the Board, which affirmed the referee's decision on March 18, 1986. The circuit court, however, concluded that plaintiff was entitled to receive the benefits and that the

decisions of the Board, the referee, and the claims adjudicator were against the manifest weight of the evidence.

Under section 409K(1)(b) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 409K(1)(b)), an individual is ineligible for extended benefits for any week of unemployment in his or her eligibility period if he or she fails to engage actively in seeking work as prescribed in section 409K(5) (Ill. Rev. Stat. 1985, ch. 48, par. 409K(5)). Section 409K(5) states that an individual is actively engaged in seeking work during a week if he or she has engaged in a systematic and sustained effort to obtain work during that week and if the individual produces tangible evidence that he or she has engaged in such an effort. Ill. Rev. Stat. 1985, ch. 48, par. 409K(5).

In ruling that plaintiff was not entitled to extended benefits, the claims adjudicator concluded in part that plaintiff had a minimum wage demand of $5.80 per hour, which was an unreasonable wage demand, that most of the places in which she sought employment did not pay that amount, and that her work search was, therefore, not calculated to return her to the work place. It is difficult to imagine how the claims adjudicator could have concluded that plaintiff's work search was not designed to return her to the work place when it did, in fact, return her to the work place for five months as a waitress. Moreover, although plaintiff did list a minimum acceptable wage of $5.80 per hour on many of her claim forms, it is obvious that she was willing to accept employment for a lesser figure since she actually did so by taking the two waitress positions which paid $2.01 and $2.25 per hour. The aforementioned findings of the claims adjudicator are plainly against the manifest weight of the evidence.

The claims adjudicator also found that plaintiff failed to engage in a systematic and sustained work search. In *Clark v. Board of Review* (1984), 126 Ill. App. 3d 559, the court held that plaintiff, an unemployed painter, had not engaged in a systematic and sustained effort to find work during a certain one-week period and was not eligible for extended unemployment benefits. According to plaintiff's testimony in *Clark*, he contacted three potential employers in person and three by telephone during the week in question. (126 Ill. App. 3d at 560.) The court agreed with the Board of Review's determination that plaintiff's efforts did not constitute a systematic and sustained work search. 126 Ill. App. 3d at 561.

The court in *Clark* also stated that an individual seeking extended benefits must attempt to find work outside his or her field after failing to find work within the field and noted that plaintiff failed to do so. (126 Ill. App. 3d at 562.) Additionally, the court pointed out that

the plaintiff failed to substantiate his work search. 126 Ill. App. 3d at 562.

In the instant case, plaintiff, who had been a silk-screener, not only sought, but procured employment in another field. Furthermore, plaintiff did substantiate much of her work search on the claim forms, listing 84 prospective employers she had contacted. The only remaining factor is whether the number of contacts made was sufficient to constitute a systematic and sustained work search.

In *Clark,* the plaintiff made three in-person contacts and three telephone contacts to prospective employers during the week in question. In the instant case, according to plaintiff's claim forms, she averaged between three and four contacts per week during the weeks for which she seeks extended benefits. We must, however, consider the fact that plaintiff resided in Freeport, a relatively small city. The circuit court, which was acting as a reviewing court, apparently took judicial notice of the fact that Freeport's population is approximately 25,000. It is proper for a reviewing court to take judicial notice of the population of a city. (*People ex rel. Gallenbach v. Franklin* (1944), 388 Ill. 560, 565.) The circuit court also took judicial notice of the fact that Freeport is surrounded by a rural area and that the nationwide recession caused substantial unemployment in the area during the periods in question. Our supreme court has taken judicial notice of the Great Depression of 1929 and its effects. (See *Brown v. Gerhardt* (1955), 5 Ill. 2d 106, 110; *Masters v. Elder* (1950), 407 Ill. 512, 521; *Kinney v. Lindgren* (1940), 373 Ill. 415, 421.) It was, therefore, proper for the circuit court to take into account the effects of the 1982 recession upon the Freeport area, including the resultant widespread unemployment and unavailability of jobs.

Although plaintiff was operating from a small city in a rural area in the midst of a devastating recession, she was still able to locate and contact at least 84 prospective employers during the relevant periods and was successful in finding work as a waitress. While defendants point to several weeks in which plaintiff listed a minimal number of contacts on her claim forms, we believe the evidence clearly establishes that plaintiff engaged in a systematic and sustained effort to find work throughout the relevant periods. Plaintiff not only sought employment outside of her previous position as a factory silk-screener, she also accepted employment as a waitress at a substantially lower rate of pay. The evidence establishes that plaintiff used her best efforts to seek employment during the relevant periods. We agree with the circuit court's conclusion that the Board's finding that plaintiff failed to engage in a systematic and sustained effort to find employ-

ment was against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Stephenson county is affirmed.

Affirmed.

LINDBERG, P.J., and UNVERZAGT, J., concur.