ILLINOIS FRATERNAL ORDER OF POLICE LABOR COUNCIL, Plaintiff-Appellant, v. THE TOWN OF CICERO *et al.*, Defendants-Appellees.

First District (2nd Division) No. 1—97—3376

Opinion filed November 17, 1998.

Gary L. Bailey and Michelle Smith, both of Western Springs, for appellant.

Rayle & Partners (Merrick Scott Rayle, of counsel), Martin Law Firm (Maureen Martin, of counsel), Pulliam & Birge (Bradley Daniel Birge, of counsel), and Law Offices of Howard B. Prossnitz, all of Chicago, for appellees.

JUSTICE COUSINS delivered the opinion of the court:
Three Cicero police officers were given notice that they were to be

fired for violation of an ordinance requiring employees of the town to live in Cicero. The officers sought to have their cases heard before a neutral arbitrator, as they said was provided for in the collective bargaining agreement between the town and their union. The town refused to go to arbitration based on its view that the collective bargaining agreement did not obligate it to do so. The union filed suit to compel arbitration pursuant to the Uniform Arbitration Act (710 ILCS 5/1 *et seq.* (West 1994)). The Cicero Board of Fire, Police and Public Safety Commissioners intervened as a defendant, claiming that the officers' cases could not be heard before an arbitrator since it alone had authority to determine cause for dismissal of police officers in the town. The town filed a section 2—615 motion to dismiss, which the judge granted. 735 ILCS 5/2—615 (West 1994). The union now appeals this dismissal.

The union claims the trial court erred by: (1) finding that the town and the union did not have the authority to provide for termination procedures other than those set out in the ordinance establishing the Board of Fire, Police and Public Safety Commissioners; (2) finding that, even if the arbitration procedure agreed upon by the town and the union was not *ultra vires*, the officers' cases would not qualify as arbitrable grievances under applicable state and local law; and (3) ruling that the collective bargaining agreement itself contained a provision barring arbitration of grievances relating to residency requirements.

BACKGROUND

The Illinois Fraternal Order of Police Labor Council (Union), the plaintiff in this suit, is a labor organization that serves as the exclusive bargaining representative of full-time peace officers of the rank of patrolman employed by the Town of Cicero (Town). The Town, the original defendant, is a home rule municipal corporation in Cook County. The Board of Fire, Police and Public Safety Commissioners of the Town of Cicero (Board), an intervening defendant, is a governmental unit given the authority for discipline and discharge of Cicero firefighters and police officers.

In 1994, the Union entered into a collective bargaining agreement (Agreement) with the Town, pursuant to the Illinois Public Labor Relations Act (the Act) (5 ILCS 315/1 *et seq.* (West 1994)).

In May and June of 1997, three patrolmen working for the Town of Cicero were notified that charges seeking their discharge had been filed before the Board due to their violation of the Town's residency ordinance, which reads:

"(a) All persons accepting appointment or employment with the

town as officers, or employees, certified or noncertified, must make their residence and maintain their domicile within the Town of Cicero no later than six (6) months after commencing their employment and keep such domicile during the term of their appointment or employment.

(b) All persons presently appointed or employed with the town as officers, officials, or employees, certified or noncertified, must make their residence and maintain their domicile within the Town of Cicero no later than six (6) months after the effective date of this section and keep such domicile during the term of the appointment or employment.

(c) Failure of any above-described person to comply with the residency and domicile requirements will be sufficient cause for termination of employment or removal from service in a manner prescribed by law." Code of Ordinances of the Town of Cicero §§ 2—123(a), (b), (c) (1988).

Each patrolman filed a grievance, electing to have his case heard before a neutral arbitrator rather than the Board, pursuant to article 9, section 9.3, of the Agreement, which reads:

"If the Superintendent recommends a suspension for any period of time in excess of five (5) days (including a recommendation for discharge) the affected Officer shall have the right to have such action heard either by the Board of Fire and Police Commission (BOFPC). or by a neutral arbitrator, but not by both. Within five (5) business days after receipt of the Superintendent's recommendation, the Officer must select the venue for the hearing. If the Officer fails to select the venue within five (5) business days, the Superintendent shall have the right to make the selection. In the event arbitration is selected, a grievance shall be filed at Step Three of the grievance procedure."

After receiving the grievances, the Town notified the Union that each of the patrolmen's discharge hearings would be heard before a neutral arbitrator as requested. In each case, however, the Town changed its position and refused to go to arbitration.

The plaintiff then filed this suit to compel arbitration against the Town pursuant to the Uniform Arbitration Act (710 ILCS 5/1 *et seq.* (West 1994)). The Town filed a motion to dismiss, under section 2—615 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615 (West 1994)). A few days later, the Board filed a motion to intervene, which the trial judge granted. Subsequently, the trial judge granted the motion to dismiss on the grounds that the Town had expressly reserved the right not to arbitrate residency issues under article 30 of the Agreement:

"The Town of Cicero reserves the right to adopt a residency rule

for Employees covered by this collective bargaining Agreement, subject to bargaining with the Lodge, about the decision and the effects of such a rule; and provided further, that no such rule, if adopted and agreed upon, shall be enforced unless it is uniformly applied to all Employees and officers of the Town of Cicero, except where such employment requires technical training, knowledge or special expertise. Any language herein to the contrary notwithstanding, the Town reserves its right not to submit the issue of residency to arbitration pursuant to 5 ILCS 315/14."

Furthermore, the court ruled, the Town could not delegate the Board's authority to make hiring and firing decisions to an arbitrator.

The Union appeals this dismissal, claiming that: (1) the trial court erred by ruling that a collective bargaining agreement could not alter the statutory power of a police and fire commission to determine cause for termination; (2) the trial court erroneously found that residency issues did not qualify as arbitrable grievances under the Act since they did not relate to an employee's wages, hours or working conditions and did not involve the meaning, interpretation or application of the agreement; and (3) the trial court erroneously interpreted the Agreement as allowing the Town not to submit grievances, as opposed to collective bargaining impasses, concerning residency to arbitration.

We reverse.

DISCUSSION

I

The defendants contend that the Town and the Union had no power through a collective bargaining agreement to vary procedures established by ordinance for discipline or termination of employees. Therefore, no dispute concerning discipline or termination legitimately could be submitted to grievance arbitration.

The reason, the defendants claim, is that the Board is, by ordinance, vested with exclusive, nondelegable authority to hear discharge matters. Pursuant to its home rule powers Cicero adopted as an ordinance a provision of the Illinois Municipal Code specifying:

"[N]o officer or member of the fire or police department of any municipality subject to this Division 2.1 shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense. *** In case an officer or member is found guilty, the board may discharge him or may suspend him not exceeding 30 days without pay. *** In the conduct of this hearing, each member of the board shall have the power to administer oaths and affirmations, and the board shall have power to secure by its subpoena both the attendance and testimony of

witnesses and the production of books and papers relevant to the hearing." 65 ILCS 5/10—2.1—17 (West 1994).

The defendants add that section 7 of the Act provides that public employers and employess do not have the authority to settle by collective bargaining matters that contravene any other law:

"The duty 'to bargain collectively' shall also include an obligation to negotiate over any matter with respect to wages, hours and other conditions of employment, not specifically provided for in any other law or not specifically in violation of the provisions of any law. If any other law pertains, in part, to a matter affecting the wages, hours and other conditions of employment, such other law shall not be construed as limiting the duty 'to bargain collectively' and to enter into collective bargaining agreements containing clauses which either supplement, implement, or relate to the effect of such provision in other laws." 5 ILCS 315/7 (West 1994).

Since the ordinance establishing the Board gives it alone jurisdiction, defendants insist, the Town and the Union did not have the power to agree to allow submission of discipline or termination matters to grievance arbitration. To do so would be in violation of the provisions of a law. Therefore, they conclude, despite the terms of the Agreement, a patrolman may never submit a matter regarding discipline or termination to grievance arbitration.

The plaintiff, however, contends that despite the ordinance cited by the defendants, the Act authorizes the Town to change the procedure for discipline and termination hearings through collective bargaining agreements.

The primary case relied upon by the plaintiff is *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268*, 122 Ill. 2d 353, 522 N.E.2d 1219 (1988). In *Decatur*, a public sector union proposed that employees have the option to submit disciplinary grievances to arbitration. The city refused to bargain over the issue, on the grounds that the city had established a civil service commission that had sole jurisdiction to hear disciplinary matters. The union filed an unfair labor practice charge with the State Labor Relations Board (State Labor Board), which ordered the city to bargain over the issue. The city appealed. The court of appeals reversed the State Labor Board's order, but the supreme court reinstated it.

■ The supreme court's decision affirmed on the one hand that, under section 7 of the Act, proposals that conflicted with other laws were not bargainable. The court rejected the interpretation of section 7 proposed by the State Labor Board, under which collective bargaining could be conducted with virtually no regard to local laws. The court held that "the accommodation provision in section 7 allows for

laws that will limit the duty to bargain." *Decatur*, 122 Ill. 2d at 362, 522 N.E.2d at 1223.

On the other hand, however, the court decided that, under the proper interpretation of section 7, the proposal in the case before it merely supplemented, rather than conflicted with, the law establishing the civil service commission.

In making a determination of whether a term of a collective bargaining agreement conflicted with or supplemented an ordinance, the court noted, it was necessary first to look to the broad purposes of the Act, as stated in the Act itself:

> "It is the public policy of the State of Illinois to grant public employees full freedom of association, self-organization, and designation of representatives of their own choosing for the purpose of negotiating wages, hours and other conditions of employment or other mutual aid or protection." 5 ILCS 315/2 (West 1994).

This objective would be ill served by making off-limits to collective bargaining any subject on which there was a local ordinance. The court wrote:

> "We do not believe that the legislature intended to make the broad duties imposed by the Act hostage to the myriad of State statutes and local ordinances pertaining to matters of public employment." *Decatur*, 122 Ill. 2d at 364, 522 N.E.2d at 1224.

See also *American Federation of State, County, & Municipal Employees, Council 31 v. County of Cook*, 145 Ill. 2d 475, 584 N.E.2d 116 (1991).

Thus, under the correct interpretation of section 7, "the mere existence of a statute on a subject does not, without more, remove that subject from the scope of bargaining duty." *Decatur*, 122 Ill. 2d at 364-65, 522 N.E.2d at 1224. The court gave a minimum wage law as an example. It would conflict with the law for a collective bargaining agreement to provide for a wage lower than that prescribed in the law. But the existence of the law would not preempt all collective bargaining over wages, because the parties could agree to higher wages than those prescribed by the law.

As the next step, the court went on, it was necessary to consider the nature of the ordinance. In the case before it, the ordinance was optional. In other words, Decatur had the ability under its home rule powers to amend or change the terms of the civil service system. This is an important consideration, for it would not make sense to require the city to bargain over matters it had no authority to change.

The court continued that next it was necessary to see how the particular collective bargaining proposal fit in with the purposes of the Act. In the case before it, the proposal was for arbitration of disciplin-

ary grievances. This proposal, the court observed, was quite consonant with the purposes of the Act. Citing United States Supreme Court cases, the court noted the importance of arbitration as a means of resolving disputes in private sector labor disputes. See *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 4 L. Ed. 2d 1403, 80 S. Ct. 1343 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 4 L. Ed. 2d 1424, 80 S. Ct. 1358 (1960). These cases, commonly referred to as the "Steelworkers Trilogy," established a presumption of arbitrability in the context of private sector collective bargaining agreements under federal law. *Warrior & Gulf*, 363 U.S. at 584-85, 4 L. Ed. 2d at 1419, 80 S. Ct. at 1354 ("In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause is quite broad").

The court then observed that section 8 of the Act adopted the same sort of preference for grievance arbitration in the public sector:

"The collective bargaining agreement negotiated between the employer and the exclusive [bargaining] representative shall contain a grievance resolution procedure which shall apply to all employees in the bargaining unit and shall provide for binding and final arbitration of disputes concerning the administration or interpretation of the agreement unless mutually agreed otherwise." 5 ILCS 315/8 (West 1994).

In view of these considerations, the court concluded that the proposal did not conflict with the city's ordinance. See *Board of Governors v. Illinois Educational Labor Relations Board*, 170 Ill. App. 3d 463, 475, 524 N.E.2d 758, 764 (1988) ("[t]he fact that a statute does not address alternative methods to contest discharges does not imply the legislature intended the provisions set forth in the statute to be the employee's exclusive option when contesting a discharge"). The *Decatur* court concluded:

"Given the purpose of the Act, the nature of that part of the civil service system at issue here, and the legislature's express preference for arbitration as a method for resolving disputes during the life of a labor contract, unless mutually agreed otherwise, we conclude that the State Board was correct in ordering the city to bargain over the union's proposal." *Decatur*, 122 Ill. 2d at 36.

■ Since the collective bargaining provision in the instant case for grievance arbitration of disciplinary matters is essentially the very system proposed by the union in *Decatur*, the court's reasoning applies equally well to this case.

Quite recently, this court decided a case with facts similar to those of *Decatur: City of Markham v. State & Municipal Teamsters, Chauffeur & Helpers, Local 726*, 299 Ill. App. 3d 615 (1998).

In *Markham*, the union for patrol officers and sergeants reached a bargaining impasse with the City of Markham and went to interest arbitration. The employees wished to have the option to have disciplinary matters heard in grievance arbitration, but the city refused to bargain over this proposal. The interest arbitrator ruled that the city had a duty to bargain.

The city then filed an action to vacate the award on the basis that it was contrary to law. The city argued that pursuant to the Illinois Municipal Code (Municipal Code or Code) (65 ILCS 5/10—2.1—1 *et seq.* (West 1996)) it did not have the power to delegate the board of police commissioners' authority to hear matters of discipline.

This court ruled in favor of the city, explaining that "[s]ince non-home-rule municipalities lack the power to abolish or amend any statutory mandates, including those found in the Code, unless the legislature specifically grants it such power, a non-home-rule municipality cannot avoid its statutory obligations by contracting with a labor union, such as defendant in this case." *Markham*, 299 Ill. App. 3d at 617.

The court distinguished *Decatur*, pointing out

> "two significant differences that make *Decatur* stand apart from the present case. First, the civil service commission in *Decatur* was optional; the Code in this case is a mandatory civil code. Second, Decatur is a home rule municipality, whereas the City is a non-home-rule entity. Thus, the City of Decatur, unlike the City here, had the sole and exclusive ability to control which parts of its optional civil service code it would adopt, alter, amend or abolish." *Markham*, 299 Ill. App. 3d at 618.

Since the Town here, like the City of Decatur, is a home rule municipality and thus has the power to alter the Board, *Decatur*, rather than *Markham*, controls. The Town of Cicero is a home rule municipality. Under the Illinois Constitution (article VII, section 6(a)), it has the power to pass laws that conflict with the directives set out in the Municipal Code concerning the Board of Police and Fire Commissioners. *Stryker v. Village of Oak Park*, 62 Ill. 2d 523, 344 N.E.2d 5 (1976). A statute intended to limit or deny home rule powers must contain an express statement to that effect. *Rozner v. Korshak*, 55 Ill. 2d 430, 302 N.E.2d 389 (1973). Thus the scheme is optional.

The *Decatur* court, as mentioned above, observed that the Act expressed a preference for arbitration as a means of resolving labor disputes. This preference is even stronger in the case of essential em-

ployees such as police officers, who are not allowed to strike. Section 2 of the Act provides:

"To prevent labor strife and to protect the public health and safety of the citizens of Illinois, all collective bargaining disputes involving persons designated by the Board as performing essential services and those persons defined herein as security employees shall be submitted to impartial arbitrators, who shall be authorized to issue awards in order to resolve such disputes. It is the public policy of the State of Illinois that where the right of employees to strike is prohibited by law, it is necessary to afford an alternative, expeditious, equitable and effective procedure for the resolution of labor disputes subject to approval procedures mandated by this Act. To that end, the provisions for such awards shall be liberally construed." 5 ILCS 315/2 (West 1994).

The defendants rely primarily on two cases: *Weisenritter v. Board of Fire & Police Commissioners*, 67 Ill. App. 3d 799, 385 N.E.2d 336 (1978), and *Parisi v. Jenkins*, 236 Ill. App. 3d 42, 603 N.E.2d 566 (1992). *Weisenritter* is inapposite, since it was decided before the passage of the Act.

In *Parisi*, a police officer employed by the Village of Worth was on disability leave for slightly over a year due to various health problems. The collective bargaining agreement between the union and the village included a term providing that an officer's being on disability leave for a year or longer was *prima facie* good cause for dismissal. The police chief was authorized to terminate an officer on this fact alone, without giving the officer any opportunity to be heard. The court held that the union and the village did not have the power to agree on such a procedure since it conflicted with section 10—2.1—17 of the Municipal Code. *Parisi*, 236 Ill. App. 3d at 50, 603 N.E.2d at 572.

This court may take judicial notice, however, that unlike the City of Decatur and like Markham, Worth is not a home rule municipality, since its population is, and was at the time of the collective bargaining agreement, too small. *DiModica v. Department of Employment Security*, 164 Ill. App. 3d 445, 517 N.E.2d 1197 (1987) (A reviewing court may take judicial notice of the population of a city). Thus Worth did not have the power to alter the scheme provided in section 10—2.1—17 of the Municipal Code. *Parisi* is distinguishable from *Decatur* and the instant case on that basis.

Furthermore, under the reasoning of *Decatur*, the collective bargaining provision in *Parisi* would conflict with, rather than supplement, the Code. The Code requires that an officer have an opportunity to be heard, whereas the agreement allowed the police chief to dis-

charge the officer summarily. In its example, the *Decatur* court said that it would conflict with a minimum wage law for the parties to bargain a provision giving wages lower than the minimum. So too in *Parisi*, it conflicted with the Code to give the police officer fewer procedural protections than those mandated. But in the same way that parties could bargain for a wage higher than the minimum, so too in *Decatur*, and in this case, the parties may bargain for the additional procedural protection that an election of venues provides. As the court said in *Board of Governors v. Illinois Educational Labor Relations Board*, 170 Ill. App. 3d 463, 478, 524 N.E.2d 758, 764 (1988):

> "Although we agree that the arbitration procedure is radically different from the civil service procedure, the mere fact that an alternative procedure exists does not mean that the two systems conflict or are inherently inconsistent with each other. The existence of a separate procedural remedy for a discharged employee does not detract from the employee's rights, but instead supplements them."

The Board cites various cases involving state educational employees. These cases, however, are not controlling, because educational employees are not covered by the Act but, rather, by the Illinois Educational Labor Relations Act (115 ILCS 5/1 *et seq.* (West 1994)). See generally R. Perkovich & M. Stein, *Challenges to Arbitration Under Illinois Public Sector Labor Relations Statutes*, 7 Hofstra Lab. L.J. 191, 214 (1989).

## II

Grievance disputes are defined by the Act as disputes "concerning the administration or interpretation of the agreement." 5 ILCS 315/8 (West 1994). Section 9.1 of the Agreement similarly defines a grievance as a matter "involving the meaning, interpretation or application of [a] provision of this agreement." The Board argues that the dispute between the Town and the Union does not concern the meaning or application of the collective bargaining agreement but, rather, of the residency ordinance. Thus, the Board concludes, the dispute should not be subject to binding grievance arbitration.

■ The dispute, however, does involve discharge. The Agreement provides that employees shall only be discharged for "just cause," a term that is not defined in the Agreement. According to the Illinois Supreme Court, "[w]hen a collective-bargaining agreement does not define what 'just cause' is, it is left up to the arbitrator to determine if the grievants were discharged for 'just cause.' " *American Federation of State, County, & Municipal Employees v. State of Illinois*, 124 Ill. 2d 246, 256, 529 N.E.2d 534 (1988). Moreover, the Agreement specifically says that when an employee is threatened with discharge, he or she has the right to have the case arbitrated.

This court's opinion of the merits of the patrolmen's grievances is immaterial. "The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." *American Manufacturing Co.,* 363 U.S. at 568, 4 L. Ed. 2d at 1407, 80 S. Ct. at 1346. The United States Supreme Court warned courts against deciding the merits of grievances in the guise of deciding arbitrability. *Warrior & Gulf,* 363 U.S. at 585, 4 L. Ed. 2d at 1419, 80 S. Ct. at 1354; *American Manufacturing Co.,* 363 U.S. at 569, 4 L. Ed. 2d at 1407, 80 S. Ct. at 1347. See generally Note, *Collective Bargaining in the Public Sector,* 97 Harv. L. Rev. 1676 (1984).

Accordingly, unless the parties have provided otherwise, the officers' cases are subject to arbitration.

## III

■ The Town contends that the parties have provided otherwise. The grievance arbitration clause in section 9.1 of the Agreement is narrow and only provides for arbitration of certain matters. Accordingly, the Town argues, since the parties have not specifically agreed that this particular matter is grievable, the court must presume that the parties did not agree to arbitration. As a general rule, "parties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication." *Flood v. Country Mutual Insurance Co.,* 41 Ill. 2d 91, 94, 242 N.E.2d 149, 151 (1968). However, within the limited context of public employee labor disputes, the legislature has reversed this presumption by passing the Act. "Section 8 of the Act provides that all grievance disputes must be resolved by final and binding arbitration, unless there is a joint agreement of the employer and union to the contrary." *American Federation of State, County, & Municipal Employees v. State of Illinois,* 124 Ill. 2d 246, 254, 529 N.E.2d 534 (1988). Indeed, the Illinois Supreme Court had adopted the Steelworkers Trilogy principles of arbitrability in public employee labor disputes even before the enactment of the Act. See *Board of Trustees of Community College District No. 508 v. Cook County Teachers Union,* 74 Ill. 2d 412, 386 N.E.2d 47 (1979).

■ The Town argues that article 30 of the Agreement, however, constitutes a provision that would overcome the presumption of arbitrability:

> "Any language herein to the contrary notwithstanding, the Town reserves its right not to submit the issue of residency to arbitration pursuant to 5 ILCS 315/14."

At the time the Agreement was entered into, section 14 of the Act provided:

"In the case of peace officers, the arbitration decision shall be limited to wages, hours and conditions of employment and shall not include the following: i) residency requirements ***." 5 ILCS 315/14(i) (West 1994).

Prior to the filing of grievances in this case, the above provision was amended to read:

"In the case of peace officers, the arbitration decision shall be limited to wages, hours, and conditions of employment (which may include residency requirements in municipalities with a population under 1,000,000, but those residency requirements shall not allow residency outside Illinois) ***." 5 ILCS Ann. 315/14(i) (West Supp. 1998).

The court may take judicial notice that the Town of Cicero has a population under 1 million. Therefore the Act currently does not by its own terms foreclose the Town from arbitrating residency issues. Article 30 of the Agreement, however, incorporated by reference the earlier version of the provision. Thus the Agreement itself may be interpreted as barring arbitration of residency issues. As contract interpretation is a matter of law, our review of the court's decision on this point is *de novo*. *Regnery v. Meyers*, 287 Ill. App. 3d 354, 360, 679 N.E.2d 74, 77 (1997).

The plaintiff argues that section 14 (5 ILCS 315/14 (West 1994)) deals with interest arbitration, not grievance arbitration. It contends that the phrase "pursuant to 5 ILCS 315/14" was intended by the parties to limit the application of the sentence to interest rather than grievance arbitration. In the instant case, the three officers have requested grievance arbitration, so article 30 should be inapplicable.

Both parties' interpretations are plausible, but as was stated in the Steelworkers Trilogy:

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not suceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf*, 363 U.S. at 582-83, 4 L. Ed. 2d at 1417-18, 80 S. Ct. at 1353.

Accordingly, we adopt the Union's interpretation.

Reversed.

GORDON, P.J., and McNULTY, J., concur.