FIFTH DIVISION

November 26, 2003

Nos. 1-02-1391 & 1-02-1665; C.

THE CITY OF CALUMET CITY, ) Appeal from the 

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

) No. 01 CH 1363

)

ILLINOIS FRATERNAL ORDER ) 

OF POLICE LABOR COUNCIL, ) Honorable

) Lester D. Foreman,

Defendant-Appellee. ) Judge Presiding.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, the City of Calumet City (the City), appeals the order of the circuit court affirming an arbitral award in favor of the Illinois Fraternal Order of Police Labor Council (the Union).  The City contends that the arbitration panel's award was arbitrary and capricious and in excess of its authority.  The Union cross-appeals the order of the circuit court staying the enforcement of the arbitral award pending appeal.   We affirm the arbitral award and lift the stay.

The Union is a labor organization that serves as the exclusive bargaining representative of all peace officers in the City.  The City is a home rule municipality in Cook County with a population under 1 million.  In the course of collective bargaining between the Union and the City over the terms of the 1999-2002 collective bargaining agreement, the parties reached an impasse with regard to 17 issues.  The Union then filed a demand for interest arbitration pursuant to section 14 of the Illinois Public Labor Relations Act (the Act)(5 ILCS 315/14 (West 2000)).  The arbitration panel ruled in favor of the Union on 12 of the issues and the circuit court affirmed.  

The City filed this appeal contesting 3 of the 12 issues decided in favor of the Union by the arbitration panel.  Specifically, the City appeals the arbitration panel's ruling: (1) lifting the residency requirement and providing that the Union's police officers may reside within a 20-mile radius outside the City; (2) providing the officers with the option of grievance arbitration for any disciplinary action in excess of five days; and (3) providing that the officers may use their official uniforms, indicia and equipment while engaged in secondary employment with a private commercial employer.

The Union argues that the City's petition for review of the arbitral award was not timely filed in the circuit court and, thus, that the appeal should be dismissed.  Section 14(k) of the Act (5 ILCS 315/14(k)(West 1998)) provides that petitions for review must be filed with the circuit court within 90 days after the arbitration panel issues its award.  The term "issue" means "to publish, put forth, circulate and to give out publicly or officially."  
County of Peoria v. American Federation of State, County & Municipal Employees
, 167 Ill. App. 3d 247, 249 (1988), citing Webster's Second College Dictionary (1972 ed.).

Here, the arbitration panel consisted of a neutral chairman, a City delegate, and a Union delegate.  The neutral chairman signed the arbitration award on October 12, 2000, the City delegate signed the award on October 31, 2000, and the Union delegate signed the award on November 8, 2000.  Thus, the earliest date that the award could have been published, put forth, circulated, or given out publicly or officially (
i.e.
, issued) by the entire arbitration panel was November 8, 2000, the date by which all three panel members signed the award.  The City filed its petition for review in the circuit court on January 25, 2001, within 90 days of November 8, 2000.  Accordingly, the City's petition was timely filed.

Next, the City argues that the arbitration panel deprived the City of its due process rights by failing to follow the mandatory procedural provisions of section 14(g) of the Act.  The Union responds that the provisions of section 14(g) are not mandatory.  

The interpretation of a statute is a question of law subject to 
de
 
novo
 review.  
Poullette v. Silverstein
, 328 Ill. App. 3d 791, 794 (2002).  The fundamental principle of statutory construction is to ascertain and give effect to the intent of the legislature.  
Poullette
, 328 Ill. App. 3d at 794.  The language of the statute is the most reliable indicator of legislative intent.  
Poulette
, 328 Ill. App. 3d at 794.

Section 14(g) of the Act provides in relevant part:

"At or before the conclusion of the hearing *** the arbitration panel 
shall
 identify the economic issues in dispute, and direct each of the parties to submit, within such time limit as the panel shall prescribe, to the arbitration panel and to each other its last offer of settlement on each economic issue."  (Emphasis added.)  5 ILCS 315/14 (g) (West 2000).

By employing the word "shall," the legislature expressed its clear intent to impose a mandatory obligation on the arbitration panel to identify the economic issues in dispute and facilitate the exchange of final settlement offers at or before the conclusion of the hearing.  See 
People v. O'Brien
, 197 Ill. 2d 88, 93 (2001)(holding that the use of the word "shall" in a statute is a clear expression of legislative intent to impose a mandatory obligation).

The City contends that the arbitration panel violated the mandatory provisions of section 14(g) by failing to identify the economic issues in dispute and preventing the City from presenting its final settlement offer.  

Review of the record indicates that prior to the hearing, the parties stipulated to the economic issues in dispute and said stipulation was accepted by the arbitration panel.  In their prehearing stipulation, the parties stated that "final offers on each impasse issue shall be exchanged by the parties and copies of each shall be provided to the Arbitrator not later than the start of the arbitration hearing on February 1, 2000.  Such final offers may not be changed except by mutual agreement of the parties."  The record of the start of the arbitration hearing on February 1, 2000, provides as follows:

"[Counsel for the Union]: We would like to exchange final offers at this juncture of the proceeding.

[Arbitrator]: All right.

[Counsel for the Union]: We are prepared to do so.

(Documents tendered to arbitration panel and counsel.)

[Counsel for the City]: We had ours set up as a separate exhibit. I'll give it to you now.

(Documents tendered to arbitration panel.)"

Thus, contrary to the City's argument, the arbitration panel accepted the parties' identification of the economic issues in dispute and allowed the parties to exchange final settlement offers prior to the conclusion of the hearing.  Accordingly, the arbitration panel adequately followed the procedural provisions set forth in section 14 of the Act.

Next, the City contends that the arbitration panel violated section 14 of the Act when it denied the City's request at the end of the hearing to amend its final settlement offer.  The City's argument is unavailing, as section 14 of the Act does not provide that the arbitration panel must accept amendments to final settlement offers after they have been exchanged.  Further, as discussed above, the parties stipulated that the final settlement offers could not be changed except by mutual agreement of the parties.  The Union did not agree to the City's amendment, and therefore the arbitration panel did not err in denying the City leave to amend.

Next, the City argues that the arbitration panel violated public policy by failing to comply with the mandatory procedural provisions of section 14(g) of the Act.  An arbitration award may be set aside if it violates an explicit public policy.  
Equity Insurance Managers of Illinois, LLC v. McNichols
, 324 Ill. App. 3d 830, 835 (2001).  The City's public policy argument is unavailing, as the arbitration panel complied with the mandatory procedural provisions of section 14(g) of the Act.  See our discussion above.

Next, the City argues that the arbitration panel exceeded its authority in lifting the residency requirement and allowing the Union's police officers to reside within a 20-mile radius outside the City.  Specifically, the City contends that residency requirements are not a mandatory subject of collective bargaining and, thus, that the arbitration panel lacked jurisdiction over this dispute.  

This same issue was raised in 
Town of Cicero v. Illinois Ass'n of Firefighters, IAFF Local 717
, 338 Ill. App. 3d 364 (2003), where the arbitrator lifted the Town of Cicero's residency requirement for its firefighters.  On appeal, the town argued that residency requirements are not a mandatory subject of collective bargaining and, thus, that the arbitrator lacked jurisdiction over this dispute.  
Cicero
, 338 Ill. App. 3d at 370.  The 
Cicero
 court held (
Cicero
, 338 Ill. App. 3d at 370) that whether a topic is a mandatory subject of collective bargaining is 
generally
 determined according to a balancing test set forth in 
Central City Education Ass'n v. Illinois Educational Labor Relations Board
, 149 Ill. 2d 496 (1992),  and 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191 (1998).  Pursuant to the test, a matter is a mandatory subject of bargaining: (1) if it concerns wages, hours and terms and conditions of employment; and (2) is either not a matter of inherent managerial authority or is a matter of inherent managerial authority, but the benefits of the bargaining outweigh the burdens bargaining imposes on the employer's authority.  
Cicero
, 338 Ill. App. 3d at 370.

The 
Cicero
 court held that the 
Central City/Belvidere
 test was not applicable or necessary to determine the arbitrability of the residency requirement, because section 14(i) of the Act, as amended in 1997, 
specifically
 provides for the negotiability of residency requirements.  
Cicero
, 338 Ill. App. 3d at 370-71.  Section 14(i) states:

"In the case of peace officers, the arbitration decision shall be limited to wages, hours, and conditions of employment (which may include residency requirements in municipalities with a population under 1,000,000 *** )***."   5 ILCS 315/14(i)(West 1998).

The 
Cicero
 court further held that even if the 
Central City
/
Belvidere
 test was applicable, each of its prongs weighs in favor of mandatory arbitrability of a residency requirement dispute.  
Cicero
, 338 Ill. App. 3d at 371.  The 
Cicero
 court held that as to prong one, 
the town's residency ordinance (like the residency ordinance at issue here) specifically provides that residency is a term and condition of employment; as to prong two, the residency requirement does not concern a matter of inherent managerial policy; and as to prong three, the benefits of bargaining for Union members outweighs any burdens to the town.  
Cicero
, 338 Ill. App. 3d at 371.  Accordingly, the 
Cicero
 court held that the arbitrator had jurisdiction to decide the residency dispute.  
Cicero
, 338 Ill. App. 3d at 371.

We adopt the reasoning in 
Cicero
 and hold that the residency of peace officers is a mandatory topic of collective bargaining and that the arbitration panel therefore had jurisdiction to decide this dispute.

Next, the City argues that the arbitration panel's decision to lift the residency requirement infringes upon the City's powers as a home rule unit to impose a residency requirement upon its peace officers.   In effect, the City contends that the residency requirement was the exclusive province of the City and was not properly a subject of arbitration.  We disagree.  The City voluntarily entered into a collective bargaining agreement with the Union, pursuant to which, as discussed above, the residency requirement was a mandatory subject of bargaining.  As a mandatory subject of bargaining, the residency requirement was subject to arbitration where, as here, an impasse was reached.  See 5 ILCS 315/14 (West 1998)(providing for arbitration where an impasse is reached on mandatory subjects of bargaining). 

Next, the City argues that the arbitration panel's lifting of the City's residency requirement and allowing the Union's officers to reside within a 20-mile radius outside the City was arbitrary and capricious. Section 14(k) of the Act provides:

"Orders of the arbitration panel shall be reviewable *** but only for reasons that the arbitration panel was without or exceeded its statutory authority; 
the order is arbitrary, or capricious
; or the order was procured by fraud, collusion or other similar and unlawful means."  (Emphasis added.) 5 ILCS 315/14(k) (West 1998). 

The arbitration panel acts arbitrarily and capriciously if it: (1) relies upon factors that the legislature did not intend for the panel to consider; (2) entirely fails to consider important aspects of the problem; or (3) offers an explanation for its decision that runs counter to the evidence or that is so implausible that it could not be ascribed to a difference in view or the product of the panel's expertise.  
Cicero
, 338 Ill. App. 3d at 372.

The arbitration panel did not act arbitrarily or capriciously in lifting the residency requirement and allowing the Union's officers to reside within a 20-mile radius outside the City.  The panel first considered whether the residency requirement was a "negotiated status quo" that should not be disturbed.  The panel determined there was no long-standing, negotiated status quo on this issue, as the residency requirement was a nonmandatory subject of bargaining until 1997, when the Act was amended to provide for the mandatory bargaining of the residency requirement.

Next, the panel considered several police reports and affidavits and determined that the safety of off-duty police officers and their families had been compromised by the residency requirement, specifically, that the officers and their families had been threatened or harassed by persons who knew their identities and home addresses.  

Next, the panel considered the "internal comparables", 
i.e.
, it noted that the clerk's unit (Teamsters Local 726) and the street/alley & water unit (Teamsters Local 142) had voluntarily accepted a residency requirement.  The panel stated that it ordinarily would be unwilling to break such a pattern in interest arbitration, but that this case was different because the City's clerical employees and members of its street/alley & water departments do not arrest suspected criminals and therefore are not concerned about whether the "criminal element" knows where they live.  The panel noted that unlike the other City workers, police officers and their families are subject to reprisal from "persons who have demonstrated no respect for the law and little regard for human life."  The panel concluded that "equity favors [the police officers] here."

Next, the panel looked at "external comparables", 
i.e.
, it considered whether collective bargaining agreements in other cities contained a residency clause.  The panel noted that the evidence was mixed.  The panel concluded that "the continuing risk of violent acts of reprisal toward [police] officers and their families is a more important consideration than whether or not residency requirements exist in comparable communities. *** There is just no conclusive evidence in the record to suggest that adoption of the Union's position on this issue would compromise the Department's ability to meet its legitimate operational objectives."  

Accordingly, the panel lifted the residency requirement and provided that the officers could reside within a 20-mile radius of the City.  The panel did not act arbitrarily and capriciously in so doing, as it did not rely on improper factors, fail to consider important aspects of the problem, or offer an explanation for its decision that was implausible or counter to the evidence.  

Next, the City argues that the arbitration panel erred by adopting the Union's proposal giving the police officers the option of grievance arbitration for any disciplinary action in excess of five days.  The City contends that this ruling conflicts with the Illinois Municipal Code (Municipal Code), which provides that the Board of Police and Fire Commissioners is vested with the exclusive authority to hear disciplinary matters involving the removal or discharge of employees.   See 65 ILCS 5/10-2.1-17 (West 1998).  The City contends that section 7 of the Act precludes the arbitration panel from adopting a Union proposal in violation of the Municipal Code.  Section 7 states in pertinent part:

"The duty 'to bargain collectively' shall also include an obligation to negotiate over any matter with respect to wages, hours and other conditions of employment, 
not specifically provided for in any other law or not specifically in violation of the provisions of any law
."  (Emphasis added.) 5 ILCS 315/7 (West 1998).

The appellate court has held that section 7 of the Act prevents an arbitrator from adopting a Union proposal that conflicts with a mandatory statute, 
i.e.
, a statute that the municipality has no authority to change.  
Illinois Fraternal Order of Police Labor Council v. Town of Cicero
, 301 Ill. App. 3d 323, 327-331 (1998).  The appellate court has further held that under the Illinois Constitution (article VII, section 6(a)), a home rule municipality has the power to pass laws that conflict with the directives set out in the Municipal Code concerning the Board of Police and Fire Commissioners.  
Police Labor Council
, 301 Ill. App. 3d at 331.  Thus, for a home rule unit (such as the City here), the Municipal Code is optional, not mandatory, and therefore section 7 does not prevent an arbitrator from adopting a Union proposal in violation of the Municipal Code.  
Police Labor Council
, 301 Ill. App. 3d at 331.

The City argues that 
City of Markham v. State & Municipal Teamsters, Chauffers & Helpers Local 726
, 299 Ill. App. 3d 615 (1998), compels a different result.  In 
Markham
, the appellate court held that the arbitrator lacked the authority to issue an award conflicting with the Municipal Code.  
Markham
, 299 Ill. App. 3d at 618.  
Markham
 is inapposite, as it involved a non-home-rule entity for which the Municipal Code was mandatory.  
Markham
, 299 Ill. App. 3d at 618. As discussed above, the City here is a home rule unit for which the Municipal Code is optional, not mandatory; therefore, unlike 
Markham
, the arbitration panel had the authority to adopt the Union proposal conflicting with the Municipal Code. 

Next, the City argues that the arbitration panel's adoption of the Union's proposal infringes upon the City's powers as a home rule unit to discipline its police officers.  In effect, the City contends that disciplinary matters are the exclusive province of the City and are not properly a subject of arbitration.  We disagree.  As discussed above, the City voluntarily entered into a collective bargaining agreement with the Union, pursuant to which disciplinary matters were mandatory subjects of bargaining.  As mandatory subjects of bargaining, disciplinary matters were subject to arbitration where, as here, an impasse was reached.  See 5 ILCS 315/14 (West 1998)(providing for arbitration where an impasse is reached on mandatory subjects of bargaining).

Next, the City argues for reversal of the arbitration panel's award allowing the Union's police officers to use their official uniforms, indicia and equipment while engaged in secondary employment as private detectives.  The City contends that by using their official uniforms, indicia and equipment while engaging in secondary employment as private detectives, the officers will be holding themselves out as agents of the City and in effect transforming the City into a detective agency.  The City contends that this will put the City in violation of the Private Detective, Private Alarm, Private Security, and Locksmith Act of 2004 (Private Detective Act)(Pub. Act 93-438, eff. August 5, 2003 (amending 225 ILCS 446/1 
et
 
seq
. (West 1998))), which provides that private detective agencies must be certified by the Illinois Department of Professional Regulation. 

The City argues that the arbitral award cannot stand, because the City is not certified as a detective agency by the Illinois Department of Professional Regulation as required by the Private Detective Act.  The City's argument is not well taken, as section 5-15 of the Private Detective Act states that the "intent of the General Assembly in enacting this statute is to regulate persons, corporations, and firms licensed under this Act for the protection of the public."  Pub. Act 93-438, §5-15, eff. August 5, 2003.  The City is not a person, corporation, or firm, and therefore it is not subject to the certification requirements of the Private Detective Act.    

For the foregoing reasons, we affirm the trial court and lift the stay of the enforcement of the arbitral award.

Affirmed; stay of the enforcement of the arbitral award lifted. 

CAMPBELL, P.J., and REID, J., concur.