MID STATE COAL COMPANY, Plaintiff-Appellee, v. FRANCIS GRIFFIN, as Knox County Superintendent of Highways, and/or Knox County Engineer, Defendant-Appellant.

Third District    No. 3—93—0698

Opinion filed June 21, 1994.

William F. Morris, of Pekin, for appellant Francis Griffin.

Raymond Kimbell III, State's Attorney, of Galesburg, for appellant Knox County.

Husch & Eppenberger, of Peoria (Michael R. Lied, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

This is an appeal by the defendant, Francis Griffin, arising from an action brought against him in his official capacity as Knox County engineer and superintendent of highways. The circuit court of Knox County awarded the plaintiff, Mid State Coal Company (Mid State), $10,810.34 in damages. Griffin's appeal is limited to the damages award. We affirm.

The record shows that on November 3, 1992, Mid State filed a petition along with co-petitioners, Midland Coal Company and Peabody Coal Company, to temporarily close and reconstruct a portion of Salem Township public road No. 351 located in Knox County. (See 605 ILCS 5/6—326.1 (West 1992).) The coal companies' proposed mining operations entailed temporarily tearing up a portion of the township road. The record also contains a document wherein Midland Coal Company offered to contract with David B. Hurst, the commissioner of highways of Salem Township, and the defendant, Francis Griffin, the Knox County engineer, to reconstruct the portion of the township road at the conclusion of mining operations.

Subsequently, in January of 1993, Mid State filed a plan for road reconstruction (the reconstruction plan) with Hurst and Griffin. On January 22, 1993, Hurst approved the plan. Griffin, however, refused to approve the plan. On January 27, 1993, the record shows Hurst issued two permits to Mid State allowing Mid State (1) to move a Bucyrus-Erie Dragline across the township roadway, and (2) to drive across the roadway overweight and over-dimension trucks and equipment for the purpose of hauling soil, coal and other materials associated with mining. The permits required Mid State to maintain proper traffic control signs/barriers. Mid State was also required to restore the road and right of way to their original elevation, reestablish the drainage ditches and "rock the road surface." Thereafter, Mid State commenced mining operations across the stretch of road which it had earlier petitioned to temporarily close.

On February 9, 1993, Mid State filed a complaint seeking an order of *mandamus* directing Griffin to review and approve the reconstruction plan. Griffin filed a motion to dismiss. Mid State filed a motion for summary judgment. Attached to the motion for summary judgment was the affidavit of Hurst, who stated that Griffin

had stated in Hurst's presence that there was no engineering objection to the reconstruction plan and that Griffin refused to sign the plan based on the advice of the Knox County State's Attorney, Raymond Kimbell.

Also attached to the motion was a letter from Kimbell to Griffin, dated November 17, 1992, in which Kimbell stated to Griffin that it would be inappropriate to sign the documents approving the proposed road closing. Kimbell stated, "The reason for this is that the county is in a lawsuit with the very coal company which is asking to close the road and the lawsuit involves the Department of Mines and Minerals permit number 227 which pertains to that road and surrounding property. The county's position as approved by the Knox County Board, is that the county is opposed to any action toward strip mining the property involved in permit 227."

On March 5, 1993, the circuit court entered summary judgment for Mid State. On March 11, 1993, the court issued a written order of *mandamus* directing Griffin, *inter alia*, to approve the reconstruction plan.

Thereafter, on March 16, 1993, Mid State filed a motion to modify the judgment to provide that Mid State might recover damages and costs based on evidence to be presented at a future hearing. Following a hearing, the circuit court "clarified" the earlier order stating that Mid State could recover its costs and damages. The court directed Mid State to file a petition for costs and damages.

Hearings were held on Mid State's petition for costs and damages on May 27, 1993, and June 29, 1993. (There is no report of proceedings from the May 27, 1993, hearing. The parties inform us that there was no court reporter present at that hearing. This omission, however, does not prevent us from fully addressing the issue raised by Griffin on appeal.)

During the hearing on June 29, 1993, Griffin questioned Mid State's president, Robert Gilstrap, about whether the company would have incurred any of the damages claimed had the road closing agreement been approved prior to August 13, 1992, the date permit No. 227 went into effect. Gilstrap responded, "Probably not." Gilstrap stated that mining operations commenced in the permit No. 227 area on August 13, 1992. At that point, Griffin questioned Gilstrap about two letters between the Department of Mines and Minerals and Midland Coal Company, dated September 7, 1989, and January 2, 1992, respectively, which purportedly contained references to a requirement that road closing agreements had to be secured prior to the commencement of mining operations in the permit No. 227 area.

Mid State objected to this line of questioning on grounds of

relevance. In response, Griffin argued the evidence was relevant because he contended Mid State and Midland knew years before the permit was issued that they had to obtain road closing agreements prior to any mining activities in the permit area and that Mid State waited until nearly three months after mining operations commenced to file the petition to close township road 351. Griffin argued that this delay in filing the petition until after mining operations commenced constituted a failure to mitigate damages and allowed him to raise the defense of *laches*. Griffin argued that had Mid State obtained approval of the road closing agreement prior to August 13, 1992, Mid State would have suffered no damages.

Following further argument, the circuit court stated, "I will sustain Mr. Lied's objection with regard to the relevance. The damages arose when the Defendant wrongfully failed to perform his ministerial duties. The damages never would have occurred if that duty had been performed in a timely fashion as required by law."

Thereafter, Griffin persisted with this line of questioning by way of an offer of proof. Griffin questioned Gilstrap about his knowledge of why Griffin refused to sign off on the reconstruction plan. Griffin then moved to admit into evidence the September 7, 1989, and January 2, 1992, letters. The court, noting its earlier relevancy ruling, denied admission.

On August 11, 1993, the circuit court sent a letter to the parties informing them of the court's decision. The court found damages for Mid State in the amount of $10,810.34. In addressing Griffin's argument that *laches* and failure to mitigate damages acted as a complete bar to recovery by Mid State, the court stated:

> "Defendant wrongfully refused to approve Plaintiff's petition to temporarily close a Salem Township road when that petition was filed November 3, 1992. Indeed, evidence adduced at the hearing on damages demonstrated that Defendant's refusal was not related to the merits of the petition, but rather that Defendant's refusal was motivated by his employer's position in other litigation involving the Plaintiff. Defendant suggests that if only Plaintiff had filed its closure petition at an earlier date, Defendant would not have engaged in his wrongful refusal. Therefore, Defendant reasons, the Plaintiff is guilty of laches and failure to mitigate.
>
> The Court does not agree that the timing of Plaintiff's petition for closure can excuse Defendant's wrongful conduct. If Plaintiff's conduct, specifically the timing of its petition for closure, is in noncompliance with its application for surface mining permits, the proper forum for raising that issue is elsewhere than in this court in this cause."

A written order awarding damages was entered on August 18, 1993.

On appeal, Griffin raises one issue—whether Mid State was barred from recovering damages based on the doctrine of *laches* and its failure to mitigate damages. We note at the outset that Griffin does not challenge Mid State's right to the order of *mandamus*, nor to any specific element of or amount of damages. The gist of Griffin's argument is that it was Mid State's alleged delay in filing its petition and reconstruction plan, and not Griffin's refusal to approve the plan, which caused Mid State's damages. Therefore, Griffin contends Mid State is completely barred from recovering damages.

The equitable defense of *laches* is available where, considering all the circumstances, a defendant shows that it would be prejudiced by an award of relief to the plaintiff considering the plaintiff's failure to assert its right over a period of time. (*In re Estate of Ierulli* (1988), 174 Ill. App. 3d 134, 528 N.E.2d 1008.) A defendant must show prejudice or hardship, rather than mere passage of time, and must demonstrate that the delay induced him to adversely change position in order for the defense of *laches* to apply. (*Nancy's Home of the Stuffed Pizza, Inc. v. Cirrincione* (1986), 144 Ill. App. 3d 934, 494 N.E.2d 795.) Application of the doctrine of *laches* is within the sound discretion of the circuit court, and a finding by that court will not be disturbed on review unless the determination is so clearly wrong as to constitute an abuse of discretion. *In re Marriage of Yakubec* (1987), 154 Ill. App. 3d 540, 507 N.E.2d 117.

We note that much of Griffin's argument on appeal is premised on facts which the circuit court found to be irrelevant and to which the court sustained Mid State's objection. It is also based on documents which the court found were inadmissible. On appeal, Griffin has raised no challenge to the evidentiary rulings of the lower court. Griffin simply presents his argument as if those rulings had never been made.

In any event, we find absolutely no merit to Griffin's contention that under the circumstances of this case the doctrine of *laches* bars Mid State's recovery. The record before us presents no evidence (admissible or otherwise) that Mid State's actions prejudiced Griffin, or that Mid State acted with other than due diligence in seeking to temporarily close the township road. The record is clear that Griffin would not have approved the plan or petition no matter when they were filed. The record reflects an ongoing dispute between county officials and the coal companies concerning strip mining in the county. Griffin was acting on the advice of the local State's Attorney, who was concerned that any action by a county official in approving

some aspect of strip mining would be seen as inconsistent with the county's litigation against the coal companies. Griffin was not induced to change his position as a result of the alleged delay by Mid State in filing its petition and reconstruction plan. Griffin's actions *vis-a-vis* Mid State's reconstruction plan were unrelated to the merits of that plan.

If anything, Griffin's argument on appeal appears to challenge Mid State's right to the order of *mandamus* or its right to permit No. 227. Neither question was before the circuit court in the case at bar. The only question was the amount of damages, an issue which Griffin does not now contest. We agree with the circuit court that the record shows it was the wrongful actions of Griffin in refusing to approve the petition and reconstruction plan, and not the actions of Mid State, which caused Mid State to incur damages in excess of $10,000. Thus, the circuit court correctly found that *laches* was not applicable in the instant case.

Since Griffin's assertions concerning failure to mitigate damages is premised on the same argument as his *laches* contention, we need not address it in any more detail than to say it is meritless.

For the foregoing reasons, the judgment of the circuit court of Knox County is affirmed.

Affirmed.

BARRY and McCUSKEY, JJ., concur.