BRIAN MIRANDA, Plaintiff-Appellant, v. MARILYN COUTEE *et al.*, Defendants-Appellees.

Third District    No. 3—02—0049

Opinion filed October 29, 2002.—Modified opinion filed January 24, 2003.

BRESLIN, J., specially concurring.

Brian Miranda, of Danville, appellant *pro se.*

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Mary E. Welsh, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE McDADE delivered the opinion of the court:

The plaintiff, Brian Miranda, is an inmate in the custody of the Illinois Department of Corrections (DOC), incarcerated at Danville Correctional Center. Following a hearing by the prison adjustment committee, plaintiff was found guilty of damage or misuse of property and insolence. Plaintiff sought a writ of *mandamus* to compel the defendants, Marilyn Coutee, John Trout and Lamark Carter, to interview his witnesses and conduct a new adjustment committee hearing. Defendants filed a motion for summary judgment, which was granted by the trial court. Plaintiff appeals, and we reverse and remand.

## FACTS

On August 1, 1998, correctional officer Daryl Henderson conducted a shakedown of plaintiff's cell. After completing the shakedown, Henderson noticed that his prescription eyeglasses were missing. Henderson later recovered his eyeglasses from the cell toilet. The frame of the glasses was twisted and the lenses were missing.

Henderson wrote a disciplinary report in which he accused plaintiff and plaintiff's cellmate of taking and destroying his eyeglasses. Several charges were listed in the disciplinary report, including damage or misuse of property, giving false information to an employee, insolence and theft.

Plaintiff was placed in temporary confinement pending a hearing by the adjustment committee on the charges. After receiving a copy of the disciplinary report, plaintiff requested in writing that two other inmates be called to testify. Plaintiff indicated "G. Guirch" would testify "that I was at his cell during shaking down, etc, etc." The request identified Guirch's cell number as 111.

Plaintiff was allowed to testify at the hearing. However, the adjustment committee did not respond to his request to call the other inmates to testify. The adjustment committee summary indicated the "witnesses were not contacted because the requests were not clear."

The adjustment committee found plaintiff guilty of damage or misuse of property and insolence. As a consequence, plaintiff received three months' segregation, a demotion to C grade for six months and revocation of three months' good-conduct credit. He was also ordered to pay restitution in the amount of $157.95.

Plaintiff filed a grievance report in which he clarified that his witness's name was actually spelled "Guirsch," and he was in cell 211 rather than 111. Plaintiff's grievance was denied.

Plaintiff then filed a petition for writ of *mandamus*, generally alleging a violation of his due process rights as a result of defendants' failure to perform their ministerial duties. Plaintiff sought an order compelling defendants to interview his witnesses and conduct a new hearing.

Defendants filed a motion for summary judgment, which was granted by the trial court.

## DISCUSSION

On appeal, plaintiff asserts the trial court erred in dismissing his petition because the facts show his due process rights were violated as a result of the failure to interview or call his witnesses to testify. Defendants contend they did not violate plaintiff's due process rights because the request was unclear. Specifically, defendants assert they could not locate Guirsch because his name was misspelled and he was identified by an incorrect cell number in the request.

■ An action for writ of *mandamus* is appropriate where there is a clear right to the requested relief, a clear duty of the defendant to act and clear authority in the defendant to comply with the writ. *Orenic v. Illinois State Labor Relations Board*, 127 Ill. 2d 453, 537 N.E.2d 784 (1989). Summary judgment is appropriate when the pleadings, depositions and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998).

■ In this case, both parties rely on the disciplinary report and adjustment committee summary for the relevant facts. In particular, plaintiff's request to call witnesses to testify is written on the disciplinary report. The reason given by defendants for the failure to interview or call the witnesses is stated in the adjustment committee summary. Therefore, the critical facts are contained in these documents and are not in dispute. In such a case, the sole function of the reviewing court is to determine whether the trial court's decision was correct as a matter of law. See *Villarreal v. Village of Schaumburg*, 325 Ill. App. 3d 1157, 759 N.E.2d 76 (2001).

■ Due process requires that an inmate be allowed to call witnesses in his defense when he is faced with possible revocation of good-time credit. *Wolff v. McDonnell*, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974). However, this right is not absolute. *Wolff*, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963. Prison officials must have discretion to keep the hearing within reasonable limits and to bar wit-

nesses that may create a risk of reprisal or undermine authority. *Wolff*, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963. Accordingly, an inmate's witness request may be denied if the reasons for the denial are logically related to preventing hazards to institutional safety or correctional goals. *Ponte v. Real*, 471 U.S. 491, 85 L. Ed. 2d 553, 105 S. Ct. 2192 (1985).

■ In this case, plaintiff's good-conduct credit was revoked. Therefore, plaintiff was deprived of a liberty interest, which is afforded due process protections. As noted, plaintiff's witness request could be denied if the reason for the denial was related to institutional safety or correctional goals. However, the only reason given for the failure to interview plaintiff's witnesses was that his request was unclear. Defendants assert that they were unable to locate Guirsch because his name was misspelled and an incorrect cell location was listed in plaintiff's request.

We find the request was sufficiently clear that defendants could have determined the identity of this witness. Plaintiff identified the witness as "G. Guirch." The record shows plaintiff was in cell 204, while Guirsch was in 211. Defendants' assertion that they could not locate Guirsch is not credible given the slight misspelling of his last name and the proximity of his cell to plaintiff's cell. We also note that any confusion could have been clarified by simply asking plaintiff where the witness was located.

An inmate's right to present the testimony of witnesses should not be discounted because many times it is his only available means to disprove the charges of a prison guard. *Whitlock v. Johnson*, 153 F.3d 380 (7th Cir. 1998); *Hayes v. Walker*, 555 F.2d 625 (7th Cir. 1977). A reasonable effort to locate the witness is not unduly burdensome given plaintiff's important interest in this matter.

Based on these circumstances, we conclude defendants' reason for failing to interview Guirsch—that the request was unclear—is not related to promoting institutional safety or correctional goals. Therefore, the failure to interview or call Guirsch to testify resulted in a violation of plaintiff's due process rights.

Defendants also contend that any violation of plaintiff's due process rights was harmless error. However, Guirsch's testimony, if believed, could have shown plaintiff was not present in his cell when the eyeglasses were taken and destroyed. The failure to call Guirsch to testify cannot be deemed harmless error because his testimony could have proven plaintiff was not guilty of the charges.

Finally, we conclude defendants were required to act and had the authority to act to vindicate plaintiff's due process rights in this matter. Accordingly, defendants are not entitled to judgment as a matter

of law. We reverse the trial court's order granting defendants' motion for summary judgment and remand this cause for proceedings consistent with this order.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Will County is reversed, and the cause is remanded for proceedings consistent with this order.

Reversed and remanded.

HOLDRIDGE, J., concurs.

JUSTICE BRESLIN, specially concurring:

I concur specially to express my disappointment and dismay that the Department has denied this inmate his due process rights. Given the unusual name of the requested witness, to suggest that it could not identify the witness is either an admission of incompetence or an intentional denial of this person's basic constitutional rights. Either scenario is inexcusable.