HOWARD VINCENT ASHLEY, Plaintiff-Appellant, v. MARK A. PIERSON, Warden, *et al.*, Defendants-Appellees.

Fourth District   No. 4—02—0377

Opinion filed June 17, 2003.—Rehearing denied July 17, 2003.

COOK, J., dissenting.

Howard Vincent Ashley, of Canton, appellant *pro se.*

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Diane M. Potts, Assistant Attorney General, of counsel), for appellees.

JUSTICE STEIGMANN delivered the opinion of the court:

In October 2001, plaintiff, Howard Vincent Ashley, filed a petition for writ of *mandamus*, alleging that defendants, Mark A. Pierson, warden of Henry Hill Correctional Center, and Donald N. Snyder, Jr., the Director of the Illinois Department of Corrections (DOC), failed to perform certain ministerial duties during May 1998 and March 1999 disciplinary proceedings. In December 2001, Pierson and Snyder filed a motion to dismiss Ashley's petition, and the trial court later granted that motion. Ashley appeals, and we affirm.

## I. BACKGROUND

On May 6, 1998, DOC cited Ashley, who was then an inmate at Danville Correctional Center (Danville), in an inmate disciplinary report (IDR). The IDR indicated that when two DOC officers interviewed Ashley regarding a report that he had threatened his cell mate, Ashley admitted making threatening comments while on his wing and in his cell but denied directing any comments toward his cell mate. Ashley also admitted that he told his cell mate "[g]o on and tell[,] they ain't going to do nothing but move your punk ass[.] I know how it go [*sic*] around here." The IDR charged Ashley with violating the DOC rule against intimidating or threatening other inmates (DOC Rule 206). Later that same day, a DOC officer served Ashley with the IDR.

On May 8, 1998, an adjustment committee (committee) conducted a disciplinary hearing on the charge alleged against Ashley. He appeared at the hearing, pleaded not guilty, and denied threatening his cell mate. However, Ashley admitted that (1) he and his cell mate had

a history of arguing over religion; and (2) he had had seven different cell mates in the previous five months. The committee found Ashley guilty and recommended the following disciplinary action: (1) revocation of six months of Ashley's good-time credits; (2) imposition of six months of disciplinary segregation; and (3) six months' demotion to C-grade status. The committee also recommended that Ashley be transferred to another correctional facility. The chief administrative officer later affirmed the committee's guilty finding but reduced the discipline to revocation of one month of good-time credits, imposition of two months of segregation, and six months' demotion to C-grade status.

Following his transfer to the Centralia Correctional Center, Ashley filed a grievance, alleging that (1) he did not admit threatening his cell mate; (2) a Danville correctional officer named Smalls had convinced Ashley's cell mate to fabricate a report of threats; and (3) an inmate named Titus McCaa could testify that he heard Smalls coaching Ashley's cell mate. (The record does not indicate the dates on which these events occurred.)

On September 9, 1998, the administrative review board (board) heard Ashley's grievance. The board recommended that (1) the IDR be remanded to Danville "to be rewritten to substantiate the charges, reserved[,] and reheard within the appropriate time frames"; and (2) "[t]he requested information *** be forwarded to the [DOC] Director's office within 20 days of the receipt of this report." The then DOC Director approved the board's recommendation.

On March 18, 1999, a DOC correctional officer served Ashley with a new IDR for the May 6, 1998, incident. The IDR was substantially the same as the original IDR in terms of the description of the May 6, 1998, incident. In addition, the new IDR indicated that (1) between late December 1997 and May 6, 1998, Ashley had seven different cell mates; and (2) a correctional officer assigned to Ashley's former wing stated that every inmate who had been placed with Ashley "ended up scared to cell with Ashley and in a hurry to move." The new IDR charged Ashley with violating the DOC rule against intimidating or threatening other inmates (DOC Rule 206). After being served with the new IDR, Ashley requested that the committee consider calling one witness, an inmate named Titus McCaa.

On March 22, 1999, the committee conducted a disciplinary hearing on the charge against Ashley, who appeared at the hearing, pleaded not guilty, and presented a written statement to the committee. Ashley also requested that the committee call McCaa and Smalls as witnesses. The committee summary indicates that Smalls was not called because he no longer worked for DOC and McCaa was not called

because the committee was "unable to contact" him. The committee found Ashley guilty and recommended the following disciplinary action: (1) revocation of six months of Ashley's good-time credits; (2) imposition of six months of disciplinary segregation; and (3) six months' demotion to C-grade status. The committee also recommended that Ashley be transferred to another correctional facility. The chief administrative officer later affirmed the committee's guilty finding but reduced the discipline to revocation of one month of good-time credits, imposition of two months of segregation, and six months' demotion to C-grade status.

In an August 17, 1999, letter to Ashley, the board indicated that it was satisfied with the committee's findings on remand and, thus, recommended denying Ashley's grievance regarding the May 6, 1998, incident. The letter also indicated that Snyder approved the board's recommendation.

On October 17, 2001, Ashley filed a petition for writ of *mandamus*, alleging that Pierson and Snyder had failed to perform the following ministerial duties: (1) adhere to the time frame for rehearings on remand from the board, as required by section 504.90(b)(2) of Title 20 of the Illinois Administrative Code (20 Ill. Adm. Code § 504.90(b)(2) (Conway Greene CD-ROM April 2001)); (2) appropriately address Ashley's allegations of retaliation; and (3) interview his requested witnesses. Ashley sought a *mandamus* order (1) expunging the May 6, 1998, and March 18, 1999, IDRs, and (2) restoring his good-time credits.

In December 2001, Pierson and Snyder filed a motion to dismiss Ashley's petition under sections 2—615 and 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615, 2—619 (West 2000)). In pertinent part, Pierson and Snyder sought dismissal under section 2—619(a)(9) of the Code on the ground that Ashley's October 17, 2001, petition for writ of *mandamus* was time barred because he filed it more than six months after the completion of the disciplinary proceedings.

In January 2002, Ashley filed a response to Pierson and Snyder's motion to dismiss, arguing, in pertinent part, that his petition for writ of *mandamus* was not time barred because he was pursuing federal litigation. (The record shows that in August 2000, Ashley filed a petition for writ of *habeas corpus* in federal district court, complaining of DOC's conduct during the May 1998 and March 1999 disciplinary proceedings. Later that month, the district court dismissed Ashley's claims regarding the constitutionality of the disciplinary actions resulting in his demotion to C-grade status, his placement in segregation, and his transfer to a different facility, upon determining that those

claims could not be challenged in a *habeas corpus* petition. In August 2001, the district court dismissed the remaining claim set forth in Ashley's petition, upon determining that he had failed to exhaust his state remedies.)

Following an April 2002 telephone hearing on Pierson and Snyder's motion to dismiss Ashley's petition, the trial court granted the motion. This appeal followed.

## II. ANALYSIS

### A. Section 2—619 Motions To Dismiss

■ Section 2—619 motions to dismiss provide a means for disposing of issues of law or easily proved issues of fact. *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 94, 759 N.E.2d 906, 911 (2001). In this case, the ground advanced for dismissing Ashley's petition is that the claims asserted therein are barred by a defense that completely defeats the claims. See *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475, 478-79, 763 N.E.2d 756, 759 (2002); see also 735 ILCS 5/2—619(a)(9) (West 2000) (permitting involuntary dismissal when "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim"). The trial court should grant the motion and dismiss the complaint if, after construing the allegations in the light most favorable to the plaintiff, no set of facts can be proved that would entitle the plaintiff to recover. We review *de novo* the trial court's granting of a defendant's section 2—619 motion (*Towne Realty, Inc. v. Shaffer*, 331 Ill. App. 3d 531, 535, 773 N.E.2d 47, 51 (2002)), and we may affirm on any basis warranted by the record (*Park Superintendents' Professional Ass'n v. Ryan*, 319 Ill. App. 3d 751, 757, 745 N.E.2d 618, 624 (2001)).

### B. *Laches*

Ashley first argues that his petition for writ of *mandamus* was not barred by *laches*. We disagree.

■ The doctrine of *laches* is applied "when a party's failure to timely assert a right has caused prejudice to the adverse party." *Van Milligan v. Board of Fire & Police Commissioners*, 158 Ill. 2d 85, 89, 630 N.E.2d 830, 833 (1994). In *City of Chicago v. Condell*, 224 Ill. 595, 598-99, 79 N.E. 954, 956 (1906), the supreme court first held that the doctrine of *laches* applies to petitions for writ of *certiorari*. In that case, the court concluded that the discharged police officer's petition was barred by *laches* because (1) he did not file his petition until 18 months after his discharge; and (2) his delay in filing was not sufficiently justified. *Condell*, 224 Ill. at 598, 79 N.E. at 956. Although acknowledging that the "mere lapse of time, alone, *** will not bar

the issuing of the common[-]law writ of *certiorari*," the court held that the prejudice to a defendant is inherent in cases, such as the one then before it, "where a detriment or inconvenience to the public will result." *Condell*, 224 Ill. at 598, 79 N.E. at 956. See also *People ex rel. Casey v. Health & Hospitals Governing Comm'n*, 69 Ill. 2d 108, 115, 370 N.E.2d 499, 502 (1977) (describing the reasons for labeling as "inherent" the prejudice in certain civil service cases); *Lee v. City of Decatur*, 256 Ill. App. 3d 192, 197-98, 627 N.E.2d 1256, 1259-60 (1994) (discussing *Condell* and its progeny).

In *Clark v. City of Chicago*, 233 Ill. 113, 115, 84 N.E. 170, 171 (1908), the supreme court adhered to *Condell* and established six months as the period of time within which a petitioner must bring a petition for writ of *certiorari*. In so holding, the court stated, in pertinent part, as follows:

"We see no reason why a petitioner desiring to review the action of an inferior tribunal by the common[-]law writ of *certiorari*, in analogy to the statute relating to the review, by *certiorari*, of judgments of justices of the peace, should not be required to present his petition to the court for such writ within six months from the date of the entry of the order which he desires to have reviewed, and in case of a further delay that the delay be satisfactorily explained in the petition for the writ." *Clark*, 233 Ill. at 115, 84 N.E. at 171.

In *People ex rel. King v. City of Chicago*, 147 Ill. App. 591, 593 (1909), the First District Appellate Court held that a discharged police officer's petition for a writ of *mandamus* to compel his reinstatement, which was filed more than 10 months after his dismissal, was barred by *laches*. In so holding, the court acknowledged that *Clark* involved a petition for writ of *certiorari* and then stated, in pertinent part, as follows:

"The cases are analogous for the end aimed at is the same, although the means differ simply in procedure through which the end is sought to be accomplished. The doctrine of laches, however, is as readily invokable in the one case as in the other. The court says in [the] *Clark* case *supra*: 'The petition for the writ in this case was filed ten months after the petitioner had been removed from office, and as the petitioner makes no showing why said petition was not filed at an earlier date and within six months of the date of the entry of the order of removal by the Civil Service Commission, we think the appellee should be held to be barred, by reason of his laches, of his right to have said order reviewed by the common law writ of *certiorari*, and that the [s]uperior [c]ourt did not err in quashing the writ and dismissing the petition'.

These remarks are of equal force and pertinency to relator's petition for the writ of *mandamus*, for by this writ he is seeking the

same review as Clark did by his *certiorari* proceeding." *King*, 147 Ill. App. at 593-94, quoting *Clark*, 233 Ill. at 116, 84 N.E. at 172. We acknowledge that appellate court decisions issued before 1935 have no binding authority. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 95, 672 N.E.2d 1207, 1217 (1996). However, we view *King* as persuasive, as did the First District Appellate Court in *People ex rel. Ballinger v. O'Connor*, 13 Ill. App. 2d 317, 328-29, 142 N.E.2d 144, 149 (1957). See *North Shore Community Bank & Trust Co. v. Kollar*, 304 Ill. App. 3d 838, 844, 710 N.E.2d 106, 110 (1999) (although appellate court decisions issued before 1935 are not binding, they can be persuasive authority).

Since the First District's decision in *King*, it has become well-settled law that the doctrine of *laches* applies to petitions for writ of *mandamus*. See *Casey*, 69 Ill. 2d at 115, 370 N.E.2d at 502 (recognizing that *laches* applies to *mandamus* petitions); *Jordan v. Civil Service Comm'n*, 246 Ill. App. 3d 1047, 1052-53, 617 N.E.2d 142, 146 (1993) (because one count of the plaintiff's complaint was brought as a writ of *mandamus*, *laches* was an appropriate defense); *Richter v. Collinsville Township*, 97 Ill. App. 3d 801, 804-05, 423 N.E.2d 549, 552-53 (1981) (noting that the doctrine of *laches* applies to *mandamus* petitions).

■ Thus, the doctrine of *laches* applies both to petitions for writ of *certiorari* and *mandamus* (as was filed in this case). Generally, a party asserting *laches* must prove two fundamental elements: (1) lack of due diligence by the party asserting a claim; and (2) prejudice to the party asserting *laches*. *Lippert v. Property Tax Appeal Board*, 273 Ill. App. 3d 150, 155, 652 N.E.2d 461, 465 (1995). When a defendant asserts *laches* as a bar to a plaintiff's petition for a writ of *certiorari* or *mandamus*, the plaintiff's lack of due diligence is established by a showing that more than six months elapsed between the accrual of the cause of action and the filing of the petition, unless the plaintiff provides a reasonable excuse for the delay. See *Clark*, 233 Ill. at 115, 84 N.E. at 171; *Richter*, 97 Ill. App. 3d at 804, 423 N.E.2d at 552.

■ As to the prejudice prong, although a party asserting *laches* generally must prove that he was prejudiced by the other party's delay, in cases "where a detriment or inconvenience to the public will result," prejudice is inherent. *Condell*, 224 Ill. at 598-99, 79 N.E. at 956. We hold that such detriment and inconvenience exist in cases where inmates file petitions for writs of *mandamus* more than six months after the completion of the original DOC disciplinary proceedings and no reasonable excuse exists for the delay. In so holding, we note that DOC houses over 42,000 adult inmates who have little disincentive to litigate over disciplinary proceedings. See http://

740

www.idoc.state.il.us (visited March 25, 2003) (DOC's website); *Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill. App. 3d 935, 938, 694 N.E.2d 1021, 1025 (1998) (records from the Illinois Secretary of State's office are public records of which the appellate court may take judicial notice); *Illinois Fraternal Order of Police Labor Council v. Town of Cicero*, 301 Ill. App. 3d 323, 332, 703 N.E.2d 559, 566 (1998) (appellate court may take judicial notice of a village's population). As this court stated in *Alicea v. Snyder*, 321 Ill. App. 3d 248, 254, 748 N.E.2d 285, 290 (2001):

> "DOC conducts a large number of disciplinary proceedings every year, and the administrative expense and burden of conducting reviews so long after the completion of the original proceedings would be substantial. Such an inquiry would result in extensive public detriment and inconvenience."

See *Caruth v. Quinley*, 333 Ill. App. 3d 94, 99, 775 N.E.2d 224, 228 (2002) (an inmate's petition for *mandamus* must be brought within six months unless a reasonable explanation exists for the delay).

■ In this case, Ashley filed his petition for writ of *mandamus* more than two years after the entry of the August 17, 1999, final administrative decision. Ashley blames his delay in initiating the proceedings on his pursuit of federal claims. However, Ashley's decision to pursue federal relief does not justify his delay in bringing these proceedings. See *Alicea*, 321 Ill. App. 3d at 254, 748 N.E.2d at 290. Filing an action in federal court did not preclude Ashley from filing an action for writ of *mandamus* in state court. We thus conclude that Ashley offered no reasonable excuse for the more than two-year delay in filing his petition.

Because (1) Ashley offered no reasonable excuse for his delay in initiating proceedings; and (2) Pierson and Snyder were inherently prejudiced by that delay, we affirm the trial court's order granting the motion to dismiss Ashley's petition for writ of *mandamus*.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

TURNER, J., concurs.

JUSTICE COOK, dissenting:

In *Caruth*, this court held that a prisoner's complaint for *mandamus* was barred by *laches*, stating that "[a] complaint for *mandamus* must be brought within six months unless there is a reasonable explanation for delay." *Caruth*, 333 Ill. App. 3d at 99-100, 775 N.E.2d

at 228, citing *Richter*, 97 Ill. App. 3d at 804, 423 N.E.2d at 552. *Richter*, however, held that "[p]assage of time by itself does not bar relief; and if a defendant does not establish that he has been materially prejudiced by the delay, the plaintiff is not guilty of laches." *Richter*, 97 Ill. App. 3d at 804, 423 N.E.2d at 552.

In this case, the majority opinion attempts to rehabilitate *Caruth* by creating a new rule of law that the State is presumed to be prejudiced when a prisoner files a complaint for *mandamus* more than six months after the completion of the DOC disciplinary hearings that are being challenged.

I disagree with the majority's conclusion that the State can be presumed to be prejudiced in every case where a prisoner filed a complaint for *mandamus* more than six months after the completion of the DOC disciplinary proceedings. This new rule is ostensibly based upon the holding in *Condell* that "where a detriment or inconvenience to the public will result," prejudice is inherent. *Condell*, 224 Ill. at 598-99, 79 N.E. at 956.

It is true that, in some circumstances, there is inherent prejudice to the public when a petitioner waits more than six months to challenge an administrative proceeding. In *Condell*, for example, the plaintiff was a discharged police officer. He filed a petition for a common law writ of *certiorari* to review the civil service proceedings that led to his discharge 1½ years after the proceedings ended. The plaintiff sought reinstatement and back pay. The court noted:

> "To restore appellee to his position would confer upon him the right to require the payment of his salary to the date of his restoration. Where such consequences must result to the public, a delay for the length of time that elapsed between appellee's discharge and the date of filing his petition is unreasonable ***." *Condell*, 224 Ill. at 599, 79 N.E. at 956.

The court rightly held that when back pay is involved in a civil service case, the public is prejudiced by any delay in filing suit to challenge the dismissal. If the plaintiff prevails, the public ends up paying plaintiff for all the time he was discharged, without any work in return, and that is in addition to the salary being paid to whoever filled the plaintiff's position. The longer it takes the plaintiff to bring his suit, the more it costs the public. It is now well settled that "[d]efendants in civil service cases need not establish material prejudice from plaintiff's delay in bringing suit 'because prejudice as a result of passage of time is inherent in cases such as this and need not be specially proved.' " *Lee*, 256 Ill. App. 3d at 197, 627 N.E.2d at 1259-60, quoting *People ex rel. Sullivan v. Smith*, 133 Ill. App. 2d 218, 220-21, 272 N.E.2d 755, 757 (1971).

Prisoners, on the other hand, are not civil servants and do not potentially accumulate back pay while waiting to file their *mandamus* complaints challenging a disciplinary proceeding. The question then becomes whether the costs to the public of responding to a prisoner's complaint for *mandamus* increase as time passes. Is it cheaper for the State to respond to a complaint for *mandamus* that is filed five months after a disciplinary proceeding than it is to respond to a complaint filed after seven months? The majority concludes there must be prejudice because "DOC houses over 42,000 adult inmates who have little disincentive to litigate over disciplinary proceedings." 339 Ill. App. 3d at 739. The fact that inmate litigation is a problem does not mean that delay, even a short delay, is inherently prejudicial. The State is not prejudiced in every case where a prisoner delays in filing his complaint for *mandamus*, as proved by this case, where the State could not demonstrate any prejudice even after two years of delay. Since prejudice is not inherent, and the State did not demonstrate that it was prejudiced by Ashley's delay in filing his complaint, his complaint is not barred by *laches*. See, *e.g.*, *Mid State Coal Co. v. Griffin*, 263 Ill. App. 3d 339, 343, 636 N.E.2d 1072, 1074 (1994) ("A defendant must show prejudice or hardship, rather than the mere passage of time, and must demonstrate that the delay induced him to adversely change position in order for the defense of *laches* to apply").

Getting to the merits of plaintiff's complaint, he alleged that he was denied due process in the March 22, 1999, disciplinary hearing because defendants refused to interview his requested witnesses. The Supreme Court has held that prisoners are entitled to a certain amount of process in prison disciplinary hearings, including an opportunity to call witnesses when consistent with institutional safety and correctional goals. *Wolff v. McDonnell*, 418 U.S. 539, 564-66, 41 L. Ed. 2d 935, 956-57, 94 S. Ct. 2963, 2979-80 (1974). DOC rules also require that prisoners receive process in disciplinary hearings consistent with those principles enunciated in *Wolff*. See 20 Ill. Adm. Code § 504.80 (Conway Greene CD-ROM April 2001). *Mandamus* is an appropriate remedy to compel DOC to conduct disciplinary hearings consistent with due process. See, *e.g.*, *Thompson v. Lane*, 194 Ill. App. 3d 855, 864, 551 N.E.2d 731, 737 (1990) (affirming the trial court's order issuing a writ of *mandamus* to compel DOC to conduct rehearing of inmates' disciplinary reports consistent with due process or in the alternative to restore plaintiff's lost good-time credits and demotion in grade).

The record is clear that plaintiff's requested witnesses were not contacted or interviewed and did not testify. The stated reason in the committee summary why the witnesses were not interviewed was

simply "unable to contact witnesses." One of these witnesses was a prisoner in DOC's custody. DOC's assertion that it could not find one of its own prisoners is not credible. Therefore, the failure to interview or call this prisoner witness violated plaintiff's due process rights. See, *e.g.*, *Miranda v. Coutee*, 334 Ill. App. 3d 1057, 1060, 779 N.E.2d 929, 932 (2002) (rejecting as not credible DOC's excuse for not interviewing or calling prisoner's requested prisoner witness because it could not locate prisoner; DOC has duty to make reasonable effort to locate witness given plaintiff's important interest in the matter).

Plaintiff's complaint raises a factual allegation that if proved true, would establish a violation of his due process rights. Specifically, at the March 22, 1999, disciplinary hearing, DOC denied plaintiff his right to request witnesses be interviewed and their testimony considered. Alleging a violation of due process rights and DOC rules in a prison disciplinary proceeding states a cause of action in *mandamus*. See, *e.g.*, *Thompson*, 194 Ill. App. 3d at 864, 551 N.E.2d at 737. This claim should not have been dismissed pursuant to either section 2—615 or 2—619 because it states a cause of action on its face and it is not barred by *laches*.