# Illinois Official Reports

## Appellate Court

---

### *Walker v. Monreal*, 2017 IL App (3d) 150055

---

| | |
|---|---|
| Appellate Court Caption | DAVID D. WALKER, Plaintiff-Appellant, v. ADAM P. MONREAL, Chairman of the Illinois Prisoner Review Board, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-15-0055 |
| Filed<br>Rehearing denied | April 3, 2017<br>May 3, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 13-MR-519; the Hon. Roger Rickmon, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | David D. Walker, of Joliet, appellant *pro se*.<br><br>Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Janon E. Fabiano, Assistant Attorney General, of counsel), for appellee. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Justices McDade and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1   Plaintiff, David Walker, an inmate in the Illinois Department of Corrections (IDOC), filed a complaint for *mandamus* relief against Adam Monreal, Chairman of the Illinois Prisoner Review Board. In his complaint, Walker requested that the trial court compel Monreal to conduct a new revocation hearing regarding the revocation of his mandatory supervised release (MSR). The trial court granted Monreal's motion to dismiss the *mandamus* complaint with prejudice. Walker appealed. We affirm.

¶ 2                                          FACTS

¶ 3   According to Walker's filings in this case, he was released from prison to serve a three-year MSR term on March 29, 2000, related to case No. 90-CF-1815. On October 3, 2000, Walker was arrested for violating various terms of his MSR. On October 25, 2000, he was also charged with the unlawful use of a weapon by a felon. On June 6, 2001, he was charged, by way of indictment, with first degree murder and attempted armed robbery for an incident that had occurred on October 1, 2000. On October 11, 2002, after a jury trial, Walker was found guilty of first degree murder. The trial court sentenced him to 50 years of imprisonment.

¶ 4   On November 5, 2003, Walker appeared before the Illinois Prisoner Review Board for a revocation hearing regarding the MSR term he was serving in case No. 90-CF-1815 at the time he committed the murder offense. At the revocation hearing, Walker requested a continuance to obtain evidence to prove that the warrant issued for his arrest for alleged MSR violations was issued without verified facts to establish probable cause. The hearing officer denied the request for a continuance, reasoning that Walker's argument of lack of probable cause to support the warrant that had been issued on October 3, 2000, was moot in light of Walker being convicted of a murder that he committed during the MSR term, on October 1, 2000. The hearing officer indicated that the revocation of the MSR term should proceed based on Walker having violated the conditions of the MSR as evinced by his murder conviction.

¶ 5   On February 26, 2013, nearly 10 years later, Walker filed a complaint for *mandamus* relief, requesting that the trial court compel Monreal, the Chairman of the Illinois Prisoner Review Board, to conduct a second revocation hearing. In the complaint, Walker argued that he was denied due process at the original revocation hearing.

¶ 6   On August 12, 2013, Walker filed a motion for default because Monreal had been served with the complaint but failed to file an answer. On August 22, 2013, the trial court entered an order giving Monreal one month to answer or otherwise plead to Walker's default motion.

¶ 7   On September 26, 2013, an assistant Attorney General entered his appearance to represent Monreal and filed a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2012)), arguing that Walker's *mandamus* complaint failed to state a claim. Also on September 26, 2013, Walker filed a second motion for default. The same day, the trial court denied Walker's default motions and granted Monreal leave to file the motion to dismiss. On February 27, 2014, the trial court denied Monreal's section 2-615 motion to dismiss and gave him until March 25, 2014, to answer or otherwise plead.

¶ 8   On March 26, 2014, Monreal filed a motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)), arguing that Walker's *mandamus* complaint was barred under the common law doctrine of *laches*. Monreal contended that a *mandamus* action

must be brought within six months unless there was a reasonable explanation for the delay and defendant's *mandamus* complaint was not filed until 10 years after the revocation hearing of which he complained. Monreal also argued Walker's claim was moot because Walker was convicted of first degree murder, which provided an alternative basis for revoking Walker's MSR.

¶ 9 On December 17, 2014, the trial court granted Monreal's motion and dismissed Walker's *mandamus* complaint with prejudice. In addition, the trial court found that Monreal's section 2-615 motion to dismiss should have also been granted.

¶ 10 On January 14, 2015, Walker filed a notice of appeal that was file-stamped as received by the circuit clerk on January 20, 2015. The envelope for the notice of appeal indicated, "This correspondence is from an inmate of the IDOC" and was postmarked January 16, 2015.

¶ 11 Along with the notice of appeal, defendant enclosed a "Proof/Certificate of Service," dated January 14, 2015, which was also file-stamped as being received by the circuit clerk on January 20, 2015. The certificate of service was signed by Walker and listed his address as the Stateville Correctional Center, P.O. Box 112, Joliet, Illinois. The certificate of service indicated that the documents were to be delivered to the circuit court clerk at 14 West Jefferson Street, Joliet, Illinois, 60432, and stated:

> "PLEASE TAKE NOTICE that on Jan. 14, 2015, I placed the attached or enclosed documents in the institutional mail at Stateville Correctional Center, properly addressed to the parties listed above for mailing through the United States Postal Service."

¶ 12 ANALYSIS

¶ 13 On appeal, Walker argues the trial court erred by (1) denying his motions for default, (2) granting Monreal's section 2-619 motion to dismiss, and (3) finding Monreal's section 2-615 motion to dismiss should have been granted. Monreal filed a motion to dismiss the appeal for lack of jurisdiction, arguing Walker's notice of appeal was untimely and "leaves this Court without jurisdiction to consider the appeal." Monreal also argues on appeal that this court should affirm the trial court's dismissal of the *mandamus* complaint and that the trial court did not err in denying Walker's motions for default.

¶ 14 I. Jurisdiction

¶ 15 We first address Monreal's motion to dismiss this appeal for lack of jurisdiction. A reviewing court has a duty to determine whether it has jurisdiction prior to addressing any issue on appeal. *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009). A timely notice of appeal is mandatory for jurisdiction to be conveyed upon the appellate court. *Id.* Without a properly filed notice of appeal, the appellate court lacks jurisdiction over the matter and must dismiss the appeal. *Huber v. American Accounting Ass'n*, 2014 IL 117293, ¶ 8.

¶ 16 Illinois Supreme Court Rule 303(a)(1) (eff. Jan. 1, 2015) requires an appealing party to file a notice of appeal with the clerk of the circuit court within 30 days after the entry of the final judgment being appealed (or within 30 days after the entry of the order disposing of a timely posttrial motion directed against the judgment). The time of filing of the notice of appeal will be the date on which the filings are actually received by the clerk of the reviewing court. Ill. S.

Ct. R. 373 (eff. Sept. 19, 2014).[1] However, if the clerk receives the notice of appeal after the due date, the time of mailing shall be deemed the time of filing. *Id.*

¶ 17　　　Subsection (b)(4) of Illinois Supreme Court Rule 12 specifically addresses service by mail by a *pro se* petitioner from a correctional facility, which provides that proof of service is accomplished by "certification as provided in section 1-109 of the Code of Civil Procedure (Code) (735 ILCS 5/1-109 (West 2012)) of the person who deposited the document in the institutional mail, stating the time and place of deposit and the complete address to which the document was to be delivered." Ill. S. Ct. R. 12(b)(4) (eff. Sept. 19, 2014).[2] Section 1-109 of the Code indicates that the person having knowledge of the matters stated in the document that was certified shall subscribe to a certification in substantially the following form:

> "Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true." 735 ILCS 5/1-109 (West 2014).

Section 1-109 also provides, "Any person who makes a false statement, material to the issue or point in question, which he does not believe to be true, in any pleading, affidavit or other document certified by such person in accordance with this Section shall be guilty of a Class 3 felony." 735 ILCS 5/1-109 (West 2014).

¶ 18　　　In this case, Walker's notice of appeal was due for filing in the circuit clerk's office by January 16, 2015. Ill. S. Ct. R. 303(a)(1) (eff. Jan. 1, 2015). However, the circuit clerk did not receive the notice of appeal until January 20, 2015. Since defendant's notice of appeal was received by the circuit clerk more than 30 days after the trial court dismissed his *mandamus* complaint, the time of mailing may be used to establish the filing date. Walker's proof of mailing indicated the date and place of deposit and the complete address of where the document was to be delivered but failed to include certifying language in substantial compliance with the requirements of section 1-109 of the Code.

¶ 19　　　Specifically, Walker was required to certify the following statement: "on Jan[uary] 14, 2015, I placed the attached or enclosed documents in the institutional mail at [the] Stateville Correctional Center, properly addressed to the parties listed above for mailing through the United States Postal Service." See 735 ILCS 5/1-109 (West 2014). Walker failed to indicate anywhere in the "certification" that he was certifying that he had placed the documents in the mail system on January 14, 2015, in accordance with section 1-109 of the Code. See 735 ILCS 5/1-109 (West 2014). Thus, Walker's certificate of mailing was insufficient to prove the date of mailing and failed to establish that the notice of appeal was timely filed.

¶ 20　　　Nonetheless, the envelope in which the notice of appeal was mailed was clearly postmarked January 16, 2015. Many districts have held that a postmark cannot be relied upon to provide sufficient proof of service where there is no certificate of service as required by Rule 12(b). See *People v. Blalock*, 2012 IL App (4th) 110041, ¶ 11 (postjudgment motion deemed filed on date received by clerk and not date of postmark); *People v. Smith*, 2011 IL App (4th)

---

[1]Subsequent to the relevant time pertaining to the facts of this case, Rule 373 was amended on October 6, 2016, with an effective date of November 1, 2016. Ill. S. Ct. R. 373 (eff. Nov. 1, 2016).

[2]Subsequent to the relevant time pertaining to the facts of this case, Rule 12 was amended twice, with effective dates of January 2, 2016, and November 1, 2016. Ill. S. Ct. R. 12 (eff. Nov. 1, 2016).

100430 (adhering to the strict requirement of filing an affidavit or certificate of service in compliance with Rule 12(b)); *People v. Tlatenchi*, 391 Ill. App. 3d 705, 713 (2009) (the First District Appellate Court adhered to the strict requirements of Rule 12(b) for proof of mailing); *People v. Lugo*, 391 Ill. App. 3d 995, 1002 (2009) (Second District Appellate Court held that a postmark is not sufficient proof of mailing under Rule 12(b)). However, in contrast, a panel of the Second District Appellate Court has held that a legible postmark is sufficient to establish the date of mailing. *People v. Hansen*, 2011 IL App (2d) 081226, ¶ 14 (a clearly legible postmark is sufficient proof of mailing even where there is no certificate of service as required by Rule 12(b)).

¶ 21      Here, the envelope was clearly postmarked January 16, 2015, and was made part of the record in this case. The envelope indicates that Walker mailed the notice of appeal on or before January 16, 2015. We agree with the *Hansen* court that requiring a court to ignore a clearly legible postmark is requiring the court to disregard "the best, most competent evidence" of the date of mailing. *Id.* Relying upon the clearly legible postmark in this case, we conclude that Walker's notice of appeal was timely filed. Consequently, we have jurisdiction over this appeal.

¶ 22                              II. Dismissal of the *Mandamus* Complaint

¶ 23      On appeal, Walker argues the trial court erred by (1) denying his motions for default and (2) granting Monreal's section 2-619 motion to dismiss and indicating Monreal's section 2-615 motion to dismiss should have been granted. In response, Monreal argues that this appeal should be dismissed as moot because Walker is seeking a new MSR revocation hearing but the sentence that included the applicable MSR term has been discharged. Monreal also argues that the trial court properly dismissed the *mandamus* complaint pursuant to section 2-619 of the Code because the claim was barred by the equitable doctrine of *laches*. He further argues that the dismissal of the *mandamus* complaint is appropriate pursuant to section 2-615 because the allegations of the complaint failed to state a cause of action. Finally, Monreal argues that the trial court did not abuse its discretion in denying Walker's motions for default judgment where there has been no showing of the denial of substantial justice.

¶ 24      We review *de novo* the trial court's dismissal of Walker's *mandamus* complaint pursuant to section 2-619 of the Code, and we may affirm on any basis supported by the record. *Ashley v. Pierson*, 339 Ill. App. 3d 733, 737 (2003). In the *mandamus* complaint, Walker requested a new revocation hearing so that he could offer proof at the new hearing that the warrant for his arrest for violating the MSR term was issued without probable cause.

¶ 25      Walker's claim is barred by the doctrine of *laches*. *Laches* is applied when a party's failure to timely assert a right has caused prejudice to an adverse party. *Id.* The doctrine of *laches* applies to *mandamus* petitions. *Id.* at 739. Generally, the party asserting a *laches* defense must prove (1) a lack of due diligence by the party asserting a claim and (2) prejudice to the party asserting *laches*. *Id.* The plaintiff's lack of diligence is established by showing that more than six months has elapsed between the accrual of the cause of action and filing of the petition, unless there is a reasonable excuse for the delay. *Id.*; *Caruth v. Quinley*, 333 Ill. App. 3d 94, 99 (2002). In proving prejudice by the other party's delay, prejudice is deemed inherent "where a detriment or inconvenience to the public will result." (Internal quotation marks omitted.) *Ashley*, 339 Ill. App. 3d at 739 (quoting *City of Chicago v. Condell*, 224 Ill. 595, 598-99 (1906)). Such detriment and inconvenience exists in cases where inmates file *mandamus*

petitions more than six months after the completion of the original IDOC disciplinary proceedings and no reasonable excuse exists for the delay. *Id.*; *Alicea v. Snyder*, 321 Ill. App. 3d 248, 254 (2001) (IDOC conducts large number of disciplinary proceedings every year and the expense and burden of conducting reviews long after the original proceedings are completed would result in extensive public detriment and inconvenience).

¶ 26       In this case, Walker filed his *mandamus* complaint more than 10 years after the denial of his request for a continuance at the revocation hearing on November 5, 2003. Walker provides no reasonable excuse for the prolonged delay. Prejudice by the delayed filing of the *mandamus* complaint is inherent in this case, where more than six months has elapsed since the complained of proceeding was conducted by the Illinois Prisoner Review Board and the sentence for which the relevant MSR term was revoked has long since been discharged. See *Ashley*, 339 Ill. App. 3d at 737. Consequently, we affirm the trial court's dismissal of Walker's *mandamus* complaint pursuant to section 2-619 of the Code.

¶ 27                           III. Denial of Walker's Motions for Default

¶ 28       Walker also argues that the trial court erred in denying his motions for default. Entry of a default is a drastic remedy that should be used only as a last resort because the law prefers that controversies be determined according to the substantive rights of the parties. *In re Haley D.*, 2011 IL 110886, ¶ 69. Decisions whether to grant or deny a motion for default judgment are within the sound discretion of the trial court and will not be reversed absent an abuse of discretion or the denial of substantial justice. *Dupree v. Hardy*, 2011 IL App (4th) 100351, ¶ 51. Where a defendant files a motion to vacate a default order, the provisions of the Code governing relief from a default are to be liberally construed, with the overriding consideration being whether substantial justice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the parties to go to trial on the merits. *Haley D.*, 2011 IL 110886, ¶ 69. In making this assessment, a court should consider all events leading up to the judgment, with the determination of what is just and proper determined by the facts of each case. *Id.*

¶ 29       Given the circumstances of this case, the trial court did not abuse its discretion in denying Walker's requests for default where substantial justice would not have been accomplished had the default motions been granted. Section 2-615 of the Code governs motions to dismiss complaints that are substantially insufficient in law. See 735 ILCS 5/2-615 (West 2012). Under section 2-615 of the Code, we accept as true all well-pleaded facts contained within the complaint, along with the reasonable inferences, and view those facts in the light most favorable to the plaintiff. *Dupree*, 2011 IL App (4th) 100351, ¶ 19. Here, Walker alleged that he was arrested for violating various terms of his MSR and the arrest warrant lacked probable cause. He claimed that he requested several continuances of the MSR revocation hearing to obtain information to challenge the warrant, but the hearing officer denied those requests, finding the issue of whether there was sufficient probable cause to issue the arrest warrant to be "moot" where Walker had been convicted of a murder that took place during the MSR term that was the subject of the revocation hearing. Accepting the facts that Walker pled as true, Walker had been convicted of a murder that took place during his MSR term, and the revocation hearing officer specifically indicated that the revocation proceedings were to be based on that murder offense. The *mandamus* complaint failed to state a claim. See *McFatridge v. Madigan*, 2013 IL 113676, ¶ 17 (*mandamus* is an extraordinary remedy to

compel public officers to perform nondiscretionary official duties, wherein a plaintiff must establish a clear right to the relief sought, a clear duty of the public officer to act, and clear authority of the public officer to comply with the order); *Hadley v. Ryan*, 345 Ill. App. 3d 297, 301 (2003) (*mandamus* may not be used to direct the official to reach a particular decision or exercise his discretion in a particular manner). Substantial justice would not have been accomplished by the trial court granting Walker's default motions where the complaint failed to state a claim.

¶ 30 Furthermore, even if a default order against Monreal had been entered, upon Monreal's request for vacatur, substantial justice would require the trial court to set aside the default where the *mandamus* complaint both failed to state a claim and was barred by the doctrine of *laches*. See *Haley D.*, 2011 IL 110886, ¶ 69. Consequently, the trial court did not abuse its discretion in denying Walker's motions for default.

¶ 31            CONCLUSION

¶ 32 The judgment of the circuit court of Will County is affirmed.

¶ 33 Affirmed.